Sharon P. JONES, et al.,
Appellants/Cross–
Appellees,

v.

DISTRICT OF COLUMBIA,
Appellee/Cross–
Appellant.

Nos. 08–CV–1058, 08–CV–1662.

District of Columbia Court of Appeals.

Argued April 7, 2010.

Decided June 24, 2010.

Cyril V. Smith, Baltimore, MD, with whom Ron M. Landsman, Rockville, MD, Giannina Lynn, William K. Meyer, Baltimore, MD, and Rene H. Reixach, Rochester, NY, were on the brief, for appellants/cross-appellees.

Mary L. Wilson, Senior Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee/cross-appellant.

Before RUIZ and OBERLY, Associate Judges, and KING, Senior Judge.

OBERLY, Associate Judge:

Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*, commonly known as the Medicaid Act, requires the District of Columbia to recover certain funds from deceased beneficiaries' estates, but limits the circumstances under which the funds may be recovered. Plaintiffs in this case filed a class action suit alleging that the District ran afoul of the Act's limitations. The Superior Court denied plaintiffs' motion for class certification, but entered summary judgment for the named plaintiffs in the exact amount they had sought from the District, and awarded plaintiffs attorneys' fees and costs pursuant to 42

U.S.C. § 1988. The plaintiffs and the District have filed cross-appeals. The plaintiffs argue that the Superior Court erred in denying their motion for class certification. The District, which voluntarily and repeatedly tried to repay the named plaintiffs the funds that it had recovered long before the Superior Court ordered that it do so, appeals only the award of attorneys' fees and costs.

We resolve this case by deciding the threshold question whether the provisions of the Medicaid Act that plaintiffs have invoked create privately enforceable rights. Answering this question in the negative, we hold that the Superior Court erred in concluding that plaintiffs were prevailing parties entitled to attorneys' fees. And, given our holding that the provisions of the Medicaid Act do not create enforceable rights, we dismiss as moot plaintiffs' appeal of the Superior Court's order denying their motion for class certification. Because the District has no quarrel with the order granting summary judgment to plaintiffs, it did not appeal that order, and we do not disturb it. We do, however, remand the case to the Superior Court with instructions to dismiss plaintiffs' complaint with prejudice.

## I.

Passed in 1965, the Medicaid Act established "a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). State participation in the program is voluntary. The States that choose to participate, however, "must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services." *Id.* A State that fails to comply substantially with the requirements imposed by the Act and its implementing regulations risks having its federal funding revoked by the Secretary. 42 U.S.C. § 1396c. The District participates in the Medicaid program.

"Before 1993, the Medicaid Act permitted states, under certain circumstances, to recover medical costs paid by Medicaid from the beneficiary's estate." *West Virginia v. United States Dep't of Health & Human Servs.,* 289 F.3d 281, 284 (4th Cir.2002). But in 1993, "in the face of rapidly escalating medical-care costs, Congress amended the act to *require* states to recover certain Medicaid costs from the estates of certain deceased beneficiaries." *Id.* (citing Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103–66, § 13612, 107 Stat. 312, 627–28, codified at 42 U.S.C. § 1396p(b)(1)). There are limits, however, on what a State may recover from the estate of a deceased beneficiary. *See generally* 42 U.S.C. § 1396p.

Given our conclusion that Congress has not created a private right of action to enforce §§ 1396p(b)(1)(B), (b)(2)(A), and (b)(3)(A), we can be brief in reciting the facts of this case. Named plaintiffs in this case are Sharon P. Jones, Joseph A. Powell, and Carolyn Russell, co-personal representatives of the estates of their parents—Susie Powell and Joseph A. Powell. The District of Columbia and several individual governmental officials sued in their official capacities are the defendants. The trial court granted summary judgment to the individual defendants, *see Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), and the plaintiffs have not appealed that aspect of the trial court's summary judgment order.

The crux of plaintiffs' complaint is that the District violated the Medicaid Act—more on the specific provisions that plaintiffs invoke later—by seeking and recover-

ing funds from the estates of their parents following their parents' death. In due course, plaintiffs moved to certify a class of similarly situated personal representatives of probate estates in the District. In an Omnibus Order entered on July 1, 2008, the Superior Court denied class certification, but entered summary judgment in favor of the named plaintiffs, requiring the District to refund the money that it had collected from their parents' estates. In its opinion explaining the order, the court concluded that plaintiffs had a right to enforce the Medicaid Act under 42 U.S.C. § 1983.

The plaintiffs then noted an appeal from that portion of the Omnibus Order denying class certification, and the parties proceeded to litigate plaintiffs' request for attorneys' fees and costs. *See Dyer v. William S. Bergman & Assocs., Inc.,* 635 A.2d 1285, 1288 n. 6 (D.C.1993) ("the pendency of a request for attorney's fees after the entry of judgment on the merits does not affect the finality of that judgment") (citing *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 202–03, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988)). Plaintiffs requested, pursuant to 42 U.S.C. § 1988, over $600,000 in attorneys' fees and costs—more than four times the $141,000 that the District was ordered to repay the plaintiffs. Plaintiffs argued that they were entitled to such an award because they had persuaded the court to conclude "that the rights conferred by Section 1396p may be enforced" under 42 U.S.C. § 1983.

The District argued that plaintiffs were not entitled to fees under § 1988 because the Omnibus Order "awarded plaintiffs the exact sum of money the District offered to them over eighteen ... months earlier without a court order." To that end, the District noted that in its motion to dismiss plaintiffs' amended complaint, recognizing that it had a "fiduciary duty to its citizens," the District "acknowledged the need" to repay the funds that it had collected from the Powell Estates. But although the District attempted to repay the funds with interest, plaintiffs' lawyers declined to accept the District's offer. The District then filed a motion in Probate Court, seeking to return the money to plaintiffs (again, with interest). Plaintiffs opposed the motion, arguing that the District should not be permitted to "pick off" the named class representatives in order to scuttle a class suit. *See Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). The Probate Court denied the District's motion. And, on June 30, 2008, the day before the Omnibus Order was entered, the District made an Offer of Judgment, offering to repay to the plaintiffs the amounts collected from the Powell Estates, and to pay attorneys' fees up to $85,000. Thus, as the District saw things, the plaintiffs were not entitled to fees because they achieved nothing in litigation that the District was not willing to give up voluntarily.

The Superior Court sided in significant part with the plaintiffs. The court reasoned that "plaintiffs' success in recovering wrongfully-collected Medicaid reimbursement involved a novel issue of law and served the public's interest in preventing further wrongful collection." The court trimmed the amount of plaintiffs' fee request, however, and ultimately ordered the District to pay $355,050.66 in attorneys' fees, and $21,302.49 in costs. The District noted a timely appeal.

In a pre-argument order, we directed the parties to file supplemental briefs addressing a question conspicuously absent from the parties' briefs—*i.e.,* whether the provisions of the Medicaid Act under which the plaintiffs sued create private rights that are enforceable under § 1983. We also ordered the parties to address:

(1) whether we needed to decide the § 1983 issue as a precondition to deciding the issues raised by the parties' cross-appeals; and (2) whether the District forfeited its right to challenge the Superior Court's determination that plaintiffs may sue under § 1983 by not raising this issue in its notice of appeal or in its briefs.

## II.

We review *de novo* the trial court's conclusion that plaintiffs had a right to proceed under § 1983. *Settles v. United States Parole Comm'n,* 429 F.3d 1098, 1100 (D.C.Cir.2005); *see also Lewis v. District of Columbia Dep't of Motor Vehicles,* 987 A.2d 1134, 1138 (D.C.2010) (we review questions of law *de novo* ). For the reasons that follow, we conclude that the portions of the Medicaid Act that the plaintiffs have invoked in this litigation do not create private rights enforceable under § 1983. It follows that plaintiffs were not prevailing parties within the meaning of § 1988, and the Superior Court's order granting plaintiffs' request for attorneys' fees and costs must be reversed. Further, because plaintiffs may not proceed under § 1983, the question whether the Superior Court correctly denied plaintiffs' motion for class certification is moot.

## A.

We begin our analysis by addressing plaintiffs' argument that we cannot consider the § 1983 issue because the District failed to note an appeal from the Omnibus Order—the order in which the Superior Court concluded that plaintiffs may proceed under § 1983.

It is an "inveterate and certain" rule that "in the absence of a cross-appeal," a party may not "attack the decree [of a lower court] with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *Morley Constr. Co. v. Maryland Cas. Co.,* 300 U.S. 185, 191, 57 S.Ct. 325, 81 L.Ed. 593 (1937) (quotation marks omitted); *accord Greenlaw v. United States,* 554 U.S. 237, 128 S.Ct. 2559, 2564, 171 L.Ed.2d 399 (2008); *El Paso Natural Gas Co. v. Neztsosie,* 526 U.S. 473, 479, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999). Thus, "[o]nce an appeal is brought, if an appellee seeks to vacate, modify, or alter the rights of the parties under the judgment, it must cross-appeal or forgo review of its claim." 19 MOORE'S FEDERAL PRACTICE § 205.04[2], pp. 205–45 to 46 (3d ed. 2010). The cross-appeal rule is not a bar to our consideration of the § 1983 issue, however, because the District has no interest in "vacat[ing], modify[ing], or alter[ing]" the Omnibus Order, *id.;* although that order requires the District to provide restitution to the named plaintiffs, the District long ago (and voluntarily) sought to repay to the named plaintiffs the funds that the District collected from the estates of the named plaintiffs' parents. The District does seek vacatur of the order awarding attorneys' fees and costs—and it noted an appeal from that order.

That the Superior Court decided the § 1983 issue in the Omnibus Order does not mean that the District was obligated to appeal that order to obtain review of the court's decision of that issue; indeed, it could not have done so. Appellate courts " 'review[ ] judgments, not statements in opinions,' " *California v. Rooney,* 483 U.S. 307, 311, 107 S.Ct. 2852, 97 L.Ed.2d 258 (1987) (per curiam) (quoting *Black v. Cutter Labs.,* 351 U.S. 292, 297, 76 S.Ct. 824, 100 L.Ed. 1188 (1956)); *see also Roper,* 445 U.S. at 333, 100 S.Ct. 1166, and this means that a party "cannot appeal a judgment with which it agrees." *Pollution Control Indus. of Am., Inc. v. Van Gundy,* 979 F.2d 1271, 1273 (7th Cir.1992) (one

"cannot appeal a judgment merely because there are passages in the court's opinion that displease him—that may indeed come back to haunt him") (quotation marks omitted). In this case, as stated above, the District agrees with the Omnibus Order; although the District might not be pleased with the Superior Court's reasoning, "just because a party does not want the opinion as precedent in the case does not warrant appellate review." *Id.; see also Roper,* 445 U.S. at 333, 100 S.Ct. 1166 ("A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it.").

■ Further, we may raise the § 1983 issue regardless of whether the parties addressed it in their briefs. True, "as a general rule, 'our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.'" *Greenlaw,* 128 S.Ct. at 2564 (quoting *Castro v. United States,* 540 U.S. 375, 386, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003) (Scalia, J., concurring) (editing omitted)). Thus, our usual course is to "take the case as we find it," and accept the parties' "common premise" for the purposes of deciding the case. *Dillon v. District of Columbia Dep't of Employment Servs.,* 912 A.2d 556, 559 (D.C. 2006) (quotation marks omitted); *see also Sutton v. United States,* 988 A.2d 478, 493 (D.C.2010) (Oberly, J., concurring). Having said that, we plainly have authority to raise an issue *sua sponte* that "the parties did not lock horns over" in their briefs, for " 'when an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.'" *United States Nat'l Bank of Oregon v. Indepen-*

*dent Ins. Agents of Am., Inc.,* 508 U.S. 439, 446, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (quoting *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991)).

■ In this case, it is proper for us to consider the § 1983 issue for several reasons. *First,* plaintiffs' ability to proceed under § 1983 is "antecedent to ... and ultimately dispositive of" the question whether the Superior Court's fee award may stand. *United States Nat'l Bank of Oregon,* 508 U.S. at 447, 113 S.Ct. 2173 (quotation marks omitted); *see also Caterpillar Inc. v. Lewis,* 519 U.S. 61, 75 n. 13, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (where, as here, the issue not raised in briefing is a "predicate to an intelligent resolution of the question presented," it is appropriate for the court to consider that issue); *Gross v. FBL Fin. Servs., Inc.,* —— U.S. ——, 129 S.Ct. 2343, 2348 n. 1, 174 L.Ed.2d 119 (2009) (same). Plaintiffs defend the attorneys' fees award by emphasizing that they prevailed on, in the Superior Court's words, a "novel issue of law"— to wit, "the enforcement of the Medicaid Recovery Statute via Section 1983." It makes sense for us to consider whether the premise of this argument is correct; plaintiffs cannot simultaneously trumpet their success on the § 1983 issue and resist our analysis of it. A court "properly asked to construe a law has the constitutional power to determine whether the law exists," *United States Nat'l Bank of Oregon,* 508 U.S. at 446, 113 S.Ct. 2173, and we similarly may determine whether the cause of action that plaintiffs believe is the linchpin of their fee award exists. *See also id.* ("there can be no estoppel in the way of ascertaining the existence of a law") (quotation marks omitted). *Second,* because "Section 1988's aim is to enforce the covered civil rights statutes, not to provide a form of economic relief to improve the

financial lot of attorneys," *Perdue v. Kenny A. ex rel. Winn,* —— U.S. ——, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494 (2010) (quotation marks omitted), it would be irresponsible for us to affirm a sizeable fee award drawn from the public fisc without determining that a statutory hook for the award exists. *Last,* there is no question of procedural unfairness; the § 1983 issue was hotly contested below and we gave the parties "ample opportunity to address the issue" in this court in supplemental briefs. *United States Nat'l Bank of Oregon,* 508 U.S. at 448, 113 S.Ct. 2173.

## B.

■■■ Turning to the merits of the § 1983 issue, we begin with first principles. "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Thus, although in limited circumstances a § 1983 action may be brought against State officials to enforce statutes that have been enacted pursuant to Congress's spending power, *Maine v. Thiboutot,* 448 U.S. 1, 4–5, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), "the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

■■■ " 'To seek redress through § 1983, a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law.'* " *Gonzaga Univ. v. Doe,* 536 U.S. 273, 282, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) (quoting *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (editing omitted)). "This makes obvious sense, since § 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.,* rights independently 'secured by the Constitution and laws' of the United States." *Id.* at 285, 122 S.Ct. 2268. Thus, " '[o]ne cannot go into court and claim a violation of § 1983—for § 1983 by itself does not protect anyone against anything.' " *Id.* (quoting *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979) (some quotation marks omitted)). The distinction between rights and laws "is dispositive: rights are enforceable under § 1983; laws are not." *Sabree v. Richman,* 367 F.3d 180, 188 (3d Cir.2004).

■■■ Congress's failure explicitly to provide for private enforcement of a particular statute is not the end of the analysis; under certain circumstances, courts may infer that legislation gives rise to privately enforceable rights even in the absence of explicit language in the legislation so stating. *See generally Cannon,* 441 U.S. 677, 99 S.Ct. 1946. But, as the Court has made increasingly clear over the past few decades, courts must proceed cautiously before implying such rights in statutes that, like the Medicaid Act, were enacted pursuant to Congress's spending power. *See, e.g., Gonzaga Univ.,* 536 U.S. at 279–86, 122 S.Ct. 2268; *Sanchez v. Johnson,* 416 F.3d 1051, 1056–58 (9th Cir. 2005); *Sabree,* 367 F.3d at 183–89.

The Court's reluctance to imply private rights in spending clause legislation is grounded in federalism and separation-of-powers principles. As for the former, the Court explained recently: "Congress has broad power to set the terms on which it disburses federal money to the States, but when Congress attaches conditions to a State's acceptance of federal funds, the conditions must be set out 'unambiguous-

ly.'" *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006) (citation omitted) (quoting *Pennhurst State Sch. & Hosp.*, 451 U.S. at 17, 101 S.Ct. 1531). "'Legislation enacted pursuant to the spending power is much in the nature of a contract,' and therefore, to be bound by 'federally imposed conditions,' recipients of federal funds must accept them 'voluntarily and knowingly.' States cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain.'" *Id.* (quoting *Pennhurst State Sch. & Hosp.*, 451 U.S. at 17, 101 S.Ct. 1531); *see also Gonzaga Univ.*, 536 U.S. at 286, 122 S.Ct. 2268 ("If Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute.") (quotation marks omitted); *Indiana Prot. & Advocacy Servs. v. Indiana Family & Social Servs. Admin.*, 603 F.3d 365, 389 (7th Cir.2010) (Easterbrook, J., dissenting) ("When Congress extends a lure to state governments, the conditions must be express; otherwise the state is buying a pig in a poke.").

 The separation-of-powers problem with courts recognizing private enforcement in the absence of congressional authorization is that in our system courts are not in the business of creating causes of action. Rather, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001); *see also Wilder*, 496 U.S. at 509 n. 9, 110 S.Ct. 2510 (congressional intent requirement "reflects a concern, grounded in separation of powers, that Congress rather than the courts controls the availability of remedies for violations of statutes"); *Sabree*, 367 F.3d at 191

("we cannot presume to confer individual rights—that is a task for Congress"). Thus, absent statutory intent to authorize private enforcement, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286–87, 121 S.Ct. 1511.

In its most recent pronouncement on the topic, the Court "reject[ed] the notion that [its] cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." *Gonzaga Univ.*, 536 U.S. at 283, 122 S.Ct. 2268. *Gonzaga* offers several guideposts that are relevant to our decision today. Most importantly, *Gonzaga* explained that for a statute to create private rights, the statute's text must be "'phrased with an *unmistakable focus* on the benefitted class.'" *Id.* at 284, 122 S.Ct. 2268 (quoting *Cannon*, 441 U.S. at 691, 99 S.Ct. 1946). "Statutes that focus on the person regulated rather than the individuals protected," the Court held, "create no implication of an intent to confer rights on a particular class of persons." *Id.* at 287, 122 S.Ct. 2268 (quotation marks omitted). As examples of "rights-creating language," the Court cited Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972; both statutes, the Court explained, used "individually focused terminology" in that the statutes said, emphatically: "'No person . . . shall . . . be subjected to discrimination.'" *Id.* (editing in original).

**C.**

 Applying the Court's teachings, we hold that none of the provisions that plaintiffs are attempting to enforce in this litigation creates a private right that is enforceable via § 1983. The first provision that plaintiffs invoke is 42 U.S.C.

§ 1396p(b)(1)(B). That section provides that although a State as a general matter may not "seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual," under certain circumstances States *must* do precisely that. Specifically, as relevant here, "[i]n the case of an individual who was 55 years of age or older when the individual received such medical assistance," a State must "seek adjustment or recovery from the individual's estate, but only for medical assistance consisting of (i) nursing facility services, home and community-based services, and related hospital and prescription drug services, or (ii) at the option of the State, any items or services under the State plan." 42 U.S.C. § 1396p(b)(1)(B).

Section 1396p(b)(1)(B) plainly does not create private rights enforceable under § 1983 because it is not phrased with " 'an *unmistakable focus* on the benefitted class.' " *Gonzaga Univ.*, 536 U.S. at 284, 122 S.Ct. 2268 (quoting *Cannon,* 441 U.S. at 691, 99 S.Ct. 1946). To the contrary, § 1396p(b)(1)(B) is "focus[ed] on the [entity] regulated rather than the individual protected." *Gonzaga Univ.*, 536 U.S. at 287, 122 S.Ct. 2268 (quotation marks omitted). Absent from the provision is rights-creating language in the mold of Title VI of the Civil Rights Act of 1964 or Title IX of the Education Amendments Act of 1972. *See id.*

The same result obtains with respect to the second provision that plaintiffs have invoked, § 1396p(b)(2)(A), although it is a somewhat closer call. This provision states that "[a]ny adjustment or recovery" that is made under § 1396p(b)(1) "may be made only after the death of the individual's surviving spouse, if any, and only at a time when he has no surviving child who is under age 21, or ... is blind or permanently and totally disabled, or ... is blind or disabled as defined in section 1382c."

It must be acknowledged, we think, that this section has more of a focus on the individuals benefitted (as opposed to the regulating entity) than § 1396p(b)(1)(B). But § 1396p(b)(2)(A) does not stand alone; it relates back to § 1396p(b)(1), which, as mentioned above, is concerned with the duties of the States, not the entitlement of individuals. We must read the two provisions in concert, *BSA 77 P St. LLC v. Hawkins,* 983 A.2d 988, 999 n. 4 (D.C.2009) (Thompson, J., concurring), and it would be odd to hold that § 1396p(b)(2)(A) is privately enforceable, when all that section does is set out limitations on the non-enforceable duties imposed on States by § 1396p(b)(1). True, *Blessing* instructed that for the purposes of a § 1983 analysis, we must not look at a statute as "an undifferentiated whole," but rather must break down a complaint into "manageable analytic bites" to "ascertain whether each separate claim satisfies the various criteria ... for determining whether a federal statute creates rights." 520 U.S. at 342, 117 S.Ct. 1353. But it is one thing to say that certain provisions within an act may be enforceable although others are not; it is quite another thing to say that Congress intended that private individuals enforce some subsections within a single paragraph of a statute, but not others—all without using any explicit text to convey such a result.

In any event, even taking § 1396p(b)(2)(A) on its own, we hold that that section does not evidence an intent to create federal rights. The most that can be said for § 1396p(b)(2)(A) is that it confers certain benefits and interests. But in a § 1983 analysis, "[t]he question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries." *Gonzaga Univ.*, 536 U.S. at 286, 122 S.Ct. 2268 (quotation marks omitted); *see also Sanchez,* 416 F.3d at 1062 ("After *Gonza-*

*ga,* there can be no doubt that … a plaintiff seeking redress under § 1983 must assert the violation of an individually enforceable *right* conferred specifically upon him, not merely a violation of federal law or the denial of a *benefit* or *interest,* no matter how unambiguously conferred."). In § 1396p(b)(2)(A) there is a "total absence … of any reference to individual 'rights' or the like." *Gonzaga Univ.,* 536 U.S. at 291, 122 S.Ct. 2268 (Breyer, J., concurring). As a result, plaintiffs cannot sue under that section.

With respect to § 1396p(b)(3), the last provision under which plaintiffs sued, the § 1983 inquiry is not close. Section 1396p(b)(3) directs States to "establish procedures (in accordance with standards specified by the Secretary) under which the agency shall waive the application of this subsection … if such application would work an undue hardship as determined on the basis of criteria established by the Secretary." Section 1396p(b)(3) thus is a paradigmatic example of a provision that is not privately enforceable because it targets the regulated entity, not the person benefitted. *See Gonzaga Univ.,* 536 U.S. at 287, 122 S.Ct. 2268.

Our analysis is consistent with decisions of other courts that have considered whether various provisions of the Medicaid Act are privately enforceable. Two cases—one recognizing a private right of action and one rejecting it—are particularly illustrative. (We are aware of only one appellate decision interpreting § 1396p; that case, *Hobbs v. Zenderman,* 579 F.3d 1171, 1175 (10th Cir.2009), held that private plaintiffs could not enforce via § 1983 a different provision than those involved in this case.)

The case finding a private right of action is the Third Circuit's decision in *Sabree,* 367 F.3d 180. In *Sabree,* a class of mentally retarded adults sued to enforce portions of the Medicaid Act that "require (1) a state to provide medical assistance covering [certain] services, and (2) to do so with 'reasonable promptness.'" *Id.* at 182 (citing 42 U.S.C. §§ 1396a(a)(8), 1396a(a)(10), and 1396d(a)(15)). Because the statutory language that plaintiffs sought to enforce dictated that a State "must provide" services to *"all* [eligible] *individuals," id.* at n. 5 (quoting § 1396a(a)(10)(A)(i)) (brackets and emphasis in *Sabree* ), the court reasoned that it was clear that the provisions focused on the persons protected, not the entity regulated. *Id.* at 189–90. Moreover, the individual focus of the provisions that plaintiffs sought to enforce was "unmistakable"; indeed, the court reasoned, the provisions were indistinguishable from the "exemplars of rights-creating language"—*i.e.,* "No person shall …"—that the Supreme Court identified in *Gonzaga Univ.,* 536 U.S. at 287, 122 S.Ct. 2268, as creating individual rights. *Id.* at 190.

Contrast *Sabree* with *Sanchez,* 416 F.3d 1051, a Ninth Circuit decision holding that 42 U.S.C. § 1396a(a)(30)(A) ("§ 30(A)") does not create rights enforceable under § 1983. As relevant here, § 30(A) says: "A State plan for medical assistance— must provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan as may be necessary to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." *Sanchez,* 416 F.3d at 1055 (editing omitted). *Sanchez* held that this provision does not create an enforceable right because it has "an aggregate focus, rather than an individual focus." *Id.* at 1059.

The court reasoned: "The statute speaks not of any individual's right but of the State's obligation to develop 'methods and procedures' for providing services generally." *Id.* Moreover, "[f]ar from focusing on the rights of a specific class of beneficiaries," the provision is "concerned with a number of competing interests," and thus is not privately enforceable. *Id.* *Sanchez* distinguished *Sabree*, noting that in *Sabree* the provisions that plaintiffs sought to enforce "specifically focus[ed] on entitlements to all eligible *individuals*." *Id.* at 1061 (quotation marks omitted).

The provisions at issue in this case—like the provision in *Sanchez*, and unlike the provisions in *Sabree*—are not enforceable under § 1983. The rights-creating language that the court identified in *Sabree* is "notably absent," *Sanchez*, 416 F.3d at 1061, from the provisions at issue in this case. This is not surprising. Congress enacted the provisions that we consider in this case in response to "rapidly escalating medical-care costs," *West Virginia*, 289 F.3d at 284, with the goal of recouping money from, not delivering funds to, individuals. As such, it makes sense that the provisions are focused on the States, not on the individuals benefitted, and do not confer upon the latter enforceable rights.

Plaintiffs' arguments to the contrary are not persuasive. First, plaintiffs' heavy reliance on *Wilder*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), for the proposition that the Supreme Court "has held that, as a general matter, provisions of the Medicaid Act are ... enforceable" is wide of the mark. For one thing, the Court's *Gonzaga* decision in 2002 was a game-changer for § 1983 suits. *See Sanchez*, 416 F.3d at 1056 n. 3. And to the extent that *Wilder* retains any validity, whatever it said "as a general matter" about the Medicaid Act is not—indeed under *Blessing*, cannot be—particularly instructive as

to the enforceability of the specific provisions at issue in this case. Further, unlike the provision at issue in *Wilder*, the provisions plaintiffs invoke here were enacted in 1993, long after the Court put Congress on notice that if it wishes to create private rights, it ought to do so explicitly. *See Cannon*, 441 U.S. at 717–18, 99 S.Ct. 1946 (Rehnquist, J., concurring); *id.* at 696–99, 99 S.Ct. 1946 (majority opinion) (arguing that Congress was entitled to assume that a statute would create privately enforceable rights because the statute was drafted similarly to a statute that previously had been interpreted to confer such rights). *But see Sandoval*, 532 U.S. at 287–88, 121 S.Ct. 1511 (refusing to accord weight to "the expectations that the enacting Congress had formed in light of the contemporary legal context") (quotation marks omitted). Finally, plaintiffs' reliance on *Wilder* is undermined by the fact that Congress repealed the provision at issue in *Wilder* not long after the Court held that that provision was privately enforceable. *Florida Ass'n of Rehab. Facilities, Inc. v. Department of Health & Rehab. Servs.*, 526 F.3d 685, 687 (11th Cir.2008).

■ Plaintiffs' remaining arguments fare no better. For instance, plaintiffs claim that the "Medicaid Recovery Statute uses the word 'individual' or 'individuals' at least thirty separate times." This argument misses the point; "[a] statutory provision that," like the provisions at issue in this case, "refers to the individual only in the context of describing the necessity of developing state-wide policies and procedures does not reflect a clear Congressional intent to create a private right of action." *Sanchez*, 416 F.3d at 1059. Plaintiffs also cite federal regulations that they believe support their case, but the regulations do not expressly refer to a private cause of action, and we therefore are not bound to defer to agency rules in-

terpreting the statute. *See Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Moreover, "it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Sandoval*, 532 U.S. at 291, 121 S.Ct. 1511 ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). Finally, plaintiffs' appeal to policy considerations is not persuasive. As the Third Circuit put it, "[t]hat plaintiffs merit sympathy does not escape our notice, but neither does it govern our reasoning." *Sabree*, 367 F.3d at 183; *see also Sandoval*, 532 U.S. at 286–87, 121 S.Ct. 1511.

### D.

■ In light of our holding that the portions of the Medicaid Act under which plaintiffs sued are not privately enforceable under § 1983, the Superior Court's order awarding plaintiffs attorneys' fees and costs cannot stand. Plaintiffs sought (and the Superior Court awarded) fees and costs under 42 U.S.C. § 1988, which permits a court to award reasonable attorneys' fees to a "prevailing party, other than the United States" in a § 1983 suit. Because the Superior Court erred in concluding that plaintiffs prevailed under § 1983, we must reverse the order awarding plaintiffs attorneys' fees and costs. *See Graham*, 473 U.S. at 165, 105 S.Ct. 3099 ("where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant").

■ Our conclusion that the provisions of the Medicaid Act that plaintiffs have invoked do not create enforceable rights also means that plaintiffs' appeal of the order denying class certification is moot. Because plaintiffs cannot proceed at all, the question whether plaintiffs may proceed in class form is purely abstract and hypothetical, and thus we shall not decide it. *See Grant v. District of Columbia*, 908 A.2d 1173, 1177–78 (D.C.2006); *Thorn v. Walker*, 912 A.2d 1192, 1195 (D.C.2006).

■ Our decision with respect to the certification issue should not be read as encouraging trial judges to decide the merits of a case before deciding whether class certification is proper. Thus, even though an inquiry into the merits of a case may be appropriate at the class certification stage, *see Dukes v. Wal–Mart Stores, Inc.*, 603 F.3d 571, 583 (9th Cir.2010) (courts interpreting parallel federal rules of civil procedures are "essentially unanimous" that "district courts must satisfy themselves that the Rule 23 requirements have been met before certifying a class, which will sometimes, though not always, require an inquiry into and preliminary resolution of disputed factual issues, even if those same factual issues are also, independently, relevant to the ultimate merits of the case"), as a general matter, a court should decide the class certification question before deciding the merits of the case. *See* Super. Ct. Civ. R. 23–I(b)(1) (requiring plaintiff who seeks to represent a class to move for class certification within 90 days after the filing of a complaint). In this case, however, we have considered the merits of plaintiffs' case not for the purposes of deciding the class certification issue, but as a precondition to deciding the separate question whether plaintiffs are entitled to attorneys' fees. And having concluded that the fees award must be reversed because plaintiffs have no cause of action to pursue, we

necessarily decide that plaintiffs' appeal of the Superior Court's denial of their motion for class certification is moot.

### III.

The Superior Court's December 3, 2008, order granting plaintiffs' motion for attorneys' fees and costs is reversed. Plaintiffs' appeal of the Superior Court's July 1, 2008, Omnibus Order is dismissed as moot. The case is remanded to Superior Court with instructions to dismiss plaintiffs' complaint with prejudice. Because the District did not appeal the entry of summary judgment in favor of the named plaintiffs, we do not disturb that aspect of the Omnibus Order.

*So ordered.*