*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CF-1095

ANTHONY SMITH, APPELLANT,

v.

UNITED STATES, APPELLEE.

On Appeal from the Superior Court
of the District of Columbia
(2017-CF3-015315)

(Hon. Milton C. Lee, Trial Judge)

(Argued October 30, 2023      Decided December 21, 2023)

*Nancy Allen* for appellant.

*Timothy R. Cahill*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney, *Jessie K. Liu*, United States Attorney at the time the brief was filed, and *John P. Mannarino*, *Bianca Ford*, *Ryan H. Creighton*, and *Elizabeth Gabriel*, Assistant United States Attorneys, were on the briefs, for appellee.

Before MCLEESE and SHANKER, *Associate Judges*, and THOMPSON, *Senior Judge*.

MCLEESE, *Associate Judge*: Appellant Anthony Smith seeks review of his convictions for a number of offenses based on an incident in which he took his

former girlfriend's car without her permission, fled from the police, and crashed into several cars. We affirm in part and reverse in part.

## I. Factual and Procedural Background

The United States's evidence at trial included the following. Mr. Smith and Danielle Munn had been in a romantic relationship and had a child together. One day in August 2017, Mr. Smith punched Ms. Munn in the face and said, "You might want to ask your friend to come spare your life." Ms. Munn applied for a protection order the same day. When Ms. Munn returned home, Mr. Smith was there. Ms. Munn called the police to serve the protection order, but Mr. Smith left before the police arrived.

Mr. Smith returned about two hours later, and Ms. Munn again called the police. Mr. Smith was not cooperative, and the police arrested him and served the protection order. Mr. Smith was released from custody the next day. That same day, Ms. Munn heard her door being kicked in. She hid in a closet and called the police. After the police arrived, Ms. Munn discovered that her car and her car keys were gone.

Two days later, Ms. Munn agreed to meet Mr. Smith at a restaurant after the police were unsuccessful in retrieving her car. During the meeting, Mr. Smith took Ms. Munn's cellphone and refused to return it. They left the restaurant, and Ms. Munn saw her car. Mr. Smith got in the car, and Ms. Munn told him not to drive

because he was clearly intoxicated. Mr. Smith told Ms. Munn to get in the car. After struggling over the car keys, Ms. Munn got in the car.

Mr. Smith drove off, swerving around cars. After saying "Our daughter's not going to have her mother," Mr. Smith took out a knife and tried to stab Ms. Munn. Ms. Munn grabbed the knife, cutting her hand in the process, and the knife broke. Ms. Munn told Mr. Smith to stop the car, but Mr. Smith kept driving. When Mr. Smith slowed down because of a car in front of him, Ms. Munn jumped out of the car.

Using a bystander's phone, Ms. Munn called the police. The police arrived and broadcast a description of Ms. Munn's car. Several police vehicles located the car. After the police activated their lights to conduct a stop, Mr. Smith slowed, started to pull over to the curb, and then drove off at a "high rate of speed." During the ensuing car chase, Mr. Smith drove the wrong way on one-way streets, drove at dangerously high speeds, made illegal turns, wove in and out of traffic, and ran traffic lights and signs.

Mr. Smith also collided with several cars. He first collided with a car driven by an off-duty police officer, damaging that car and injuring its driver, who went to the hospital. After that collision, pursuing officers got out of their vehicles and ordered Mr. Smith to stop and get out of the car. Instead, Mr. Smith drove his car into one of the officer's vehicles, pinning the officer between a door and the frame

of the vehicle. That collision injured the officer and damaged the officer's car. Two other officers drew their weapons, but Mr. Smith drove off, with other officers still in pursuit.

After driving at a high speed for several blocks, Mr. Smith collided with a car driven by William Foster. Mr. Foster had been stopped at a red light, and he was not aware of Mr. Smith's car until the collision. Mr. Foster felt "a jar," but he did not suffer any physical injuries. The bumper and fender of Mr. Foster's car were damaged, requiring repairs costing approximately $2,500.

Mr. Smith continued driving, running through red lights and making an illegal turn. He then collided with a car that Shannon Mason was driving. Mr. Smith's car did not slow down before the collision, and it was "flying." Ms. Mason's car was also occupied by two of Ms. Mason's children: S.M., who was eleven years old; and C.M., who was one year old. Ms. Mason "blacked out" momentarily after the collision. When she regained consciousness, she screamed for help because she could not move her wrist and hands. Ms. Mason's car suffered extensive damage and was a "total loss." Because of the damage to the car, S.M. had to climb through a window to get out of the car. Ms. Mason and her children were taken to the hospital. Ms. Mason had injuries to her hands. S.M. was very distraught after the collision, and she suffered headaches, stomachaches, nightmares, and insomnia.

C.M., who had been asleep at the time of the collision, did not appear to have suffered physical injuries or to have been "shaken up a lot."

A police officer who had been pursuing Mr. Smith got out of her patrol car, drew her weapon, and told Mr. Smith to get out of the car. Mr. Smith did not comply, and when the officer entered Mr. Smith's car, Mr. Smith pulled a knife out of his sock. After a struggle, officers removed Mr. Smith. When officers searched Mr. Smith, they found Ms. Munn's wallet in Mr. Smith's sock.

Mr. Smith testified at trial to the following. He did not punch Ms. Munn in August 2017. He did take Ms. Munn's car without her permission. He found Ms. Munn's wallet in the car, and he intended to return it to her when they met at the restaurant. He took Ms. Munn's cellphone at the restaurant, but he did so to keep the cellphone from being a distraction during the conversation, and he intended to return the cellphone. Mr. Smith had had a couple of beers before the meeting at the restaurant, but he was nevertheless "responsible."

After the meeting in the restaurant, Ms. Munn and Mr. Smith got into Ms. Munn's car, with Mr. Smith driving. Mr. Smith did say to Ms. Munn that their "daughter's not going to have her mother anymore," but he meant only that Ms. Munn was going to lose custody because Mr. Smith was concerned about Ms. Munn's parenting.

Mr. Smith had two knives, which he kept to protect himself. He pulled one of the knives while he was driving with Ms. Munn, because he was frustrated. After Ms. Munn grabbed the knife and jumped out of the car, Mr. Smith drove around the block to see if Ms. Munn was okay. When he saw she was talking on a phone, he drove off.

Mr. Smith heard sirens and realized the police were behind him. He started to pull over, but he decided that it was not "a safe opportunity." Mr. Smith drove the wrong way down one-way streets and ran several red lights, but he did so because he was afraid, particularly after officers ran toward him with their guns drawn. Mr. Smith did not remember two of the collisions, but he never intended to collide with anyone and instead fled to save his own life.

## II. Response to Jury Note

Mr. Smith challenges the trial court's response to a note the jury sent out during deliberations asking about the charge of assault with a dangerous weapon ("ADW") involving Mr. Foster. Both parties take the position that this court should review the trial court's response deferentially, for abuse of discretion. *See, e.g., Bouknight v. United States*, 641 A.2d 857, 860 (D.C. 1994) ("[T]he decision on what further instructions, if any, to give in response to a jury question lies within the sound discretion of the trial court.") (internal quotation marks omitted). We recently clarified en banc, however, that "we review de novo whether challenged jury

instructions adequately state the law." *Fleming v. United States*, 224 A.3d 213, 219 (D.C. 2020) (en banc). Assuming without deciding that our review is de novo, we see no error in the trial court's response to the jury note at issue.

### A. Procedural Background

The initial jury instructions stated that, in order to find Mr. Smith guilty of ADW on Mr. Foster, the jury was required to find that Mr. Smith acted "voluntarily and on purpose, not by mistake or accident." The instructions further explained that the jury could "find that the Government has proven the necessary state of mind for the offense . . . if the Government proves, beyond a reasonable doubt, that Anthony Smith engaged in reckless conduct." The instructions on that charge did not refer to the concept of mitigation. In contrast, the jury instructions on the charges of destruction of property did refer to the concept of mitigation, which the instructions defined as existing when "a person acts in the heat of passion caused by adequate provocation." The instructions further stated that the heat of passion can include "terror and fear."

On the second day of deliberations, the jury sent out a note asking whether, with respect to the charge of ADW on Mr. Foster, it would be sufficient to establish "[v]oluntariness[,] or the state of mind of recklessness[,] if we find that the defendant was acting based on a reasonable fear or terror." Without objection, the trial court responded to that note by stating,

> [T]o satisfy the element of the offense of assault with a dangerous weapon, the Government must prove beyond a reasonable doubt that the defendant acted voluntarily and on purpose, not by mistake or accident. You may find that the government has proven the necessary state of mind for this offense . . . if the Government proves beyond a reasonable doubt that Anthony Smith engaged in reckless conduct[]. So in determining whether the defendant acted recklessly, you should consider all of the facts and circumstances in evidence that are relevant to that state of mind.

Later the same day, the jury sent out another note asking about the charge of ADW on Mr. Foster. The jury asked, "Can a mitigating factor like fear be used in determining whether conduct is reckless[?]" In discussing how to respond, the trial court expressed concern that the jury was taking the concept of mitigation from other offenses and attempting to apply that concept to the offense of ADW, where the concept of mitigation is not applicable. The trial court suggested responding to the note by (1) telling the jury that mitigation is not applicable to the charge of ADW on Mr. Foster; and (2) more specifically defining "recklessness," using language along the lines of "conscious indifference to the consequences of [one's] behavior."

Counsel for Mr. Smith objected, requesting instead that the jury be instructed using language from the jury instruction for reckless driving, which states that "to drive a vehicle carelessly means to do so without the degree of caution that a reasonable and prudent driver would exercise under similar circumstances." The trial court disagreed with that request, expressing concern that the definition of

"carelessly" in the reckless-driving statute might not be the same as the definition of recklessness in the context of the offense of ADW.

The trial court instructed the jury as follows:

> The mitigating factor that you have referenced in your note is not an element of [ADW]. That language appears in the [other] instructions as it relates to the destruction of property counts. When you consider whether the defendant acted recklessly, you should consider all of the facts and circumstances in evidence and determine whether the defendant's conduct was reckless. That he was aware of and disregarded the risk of injury that his conduct created.

## B. Analysis

In this court, Mr. Smith argues that the instruction quoted immediately above erroneously precluded the jury from taking Mr. Smith's testimony about his fear into account in determining whether Mr. Smith acted recklessly. We do not believe that the instruction would reasonably be understood in that manner. The trial court reasonably concluded that the jury was confused as to whether the absence of mitigation was an element of ADW. By correctly informing the jury that the absence of mitigation is not an element of ADW, the trial court gave "an appropriate and effective response dispelling the jury's confusion." *Gray v. United States*, 79 A.3d 326, 337 (D.C. 2013) (citation and internal quotation marks omitted); *see also, e.g.*, *McCray v. United States*, 133 A.3d 205, 230 (D.C. 2016) (listing elements of ADW, which do not include absence of mitigation).

The instruction then went on to reiterate several times that in determining whether Mr. Smith acted recklessly, the jury should consider "**all** of the facts and circumstances in evidence." (Emphasis added.) That broad language unambiguously indicated that the jury could consider Mr. Smith's claimed fear in determining whether Mr. Smith acted recklessly. We do not think it plausible that the jury would have misunderstood the preceding sentences, which were focused on a legal concept that the trial court told the jury was not applicable to ADW, to negate the broad language directly addressed at recklessness. In that regard, we note that defense counsel argued in closing argument, without objection, that Mr. Smith's fear was a basis for acquitting Mr. Smith of a number of charges, including the ADW charge involving Mr. Foster. The trial participants thus do not appear to have believed that the instructions barred consideration of fear in determining recklessness.

It is true, as Mr. Smith notes, that the instructions would have been even clearer if the trial court had specifically mentioned fear as being included among the facts and circumstances the jury could take into account in determining whether Mr. Smith acted recklessly. Mr. Smith did not request such specific language at trial. Moreover, the question for this court is not whether the instruction the trial court gave was perfect or could be improved upon in hindsight. Rather, the question is whether the instruction was "an adequate statement of the law." *Koonce v. District*

*of Columbia*, 111 A.3d 1009, 1022 (D.C. 2015) (internal quotation marks omitted); *see also, e.g.*, *Nat'l R.R. Passenger Corp. v. McDavitt*, 804 A.2d 275, 286 n.6 (D.C. 2002) ("If the language [of the jury instruction at issue] arguably might have been more precise, the deviation from perfection was not material."). We hold that the instruction adequately addressed the jury's apparent confusion and adequately informed the jury of the relevant legal principles.

### III. Misdemeanor Destruction of Property

Mr. Smith argues that his conviction for misdemeanor destruction of property relating to the police cruiser in the second collision should merge into his conviction for felony destruction of property relating to Ms. Munn's car. The United States concedes that issue, citing *Vines v. United States*, 70 A.3d 1170, 1178 n.10 (D.C. 2013) (where "the damage to the vehicle being driven and the vehicle struck occurred simultaneously, the separate charges of destruction of property merge[]"). We accept that concession, and we therefore reverse one of Mr. Smith's convictions for misdemeanor destruction of property (count fifteen). Because the sentence on that count ran concurrently with the sentences on other counts, and neither party has requested resentencing, we remand the case for the entry of new judgment omitting count fifteen. *See, e.g.*, *Bernal v. United States*, 162 A.3d 128, 130 n.2 (D.C. 2017) (resentencing was not necessary where sentence reversed on merger grounds ran concurrently with other sentences).

**IV. Felony Fleeing from a Law-Enforcement Officer and Reckless Driving**

Mr. Smith argues that his conviction for felony fleeing from a law-enforcement officer and his conviction for reckless driving should merge. We disagree.

Fleeing from a law-enforcement officer is a felony if the defendant either drove recklessly or caused property damage. D.C. Code § 50-2201.05b(b)(2). The jury in this case was instructed on both theories. The jury found Mr. Smith guilty of three counts of destruction of property. We recently held that in such circumstances, convictions for felony fleeing from a law-enforcement officer and reckless driving do not merge. *Lewis v. United States*, 255 A.3d 966, 970-71 (D.C. 2021) (Felony fleeing and reckless driving "do not merge because the jury found appellant guilty of felony fleeing premised in part on a theory of property damage, which is a factual element that must be proved, but that is not contained in the reckless driving statute."). *See generally, e.g.*, *id.* at 969 ("Where the same act or transaction constitutes a violation of two different statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.") (brackets and internal quotation marks omitted). We therefore affirm Mr. Smith's convictions for felony fleeing from a law-enforcement officer and reckless driving.

**V. Multiple ADW Convictions for Passengers in Ms. Mason's Car**

Mr. Smith was convicted of three counts of ADW arising from his collision with Ms. Mason's car: one for Ms. Mason, one for C.M., and one for S.M. Mr. Smith argues that those three counts should merge into one. We conclude that the convictions do not merge.

This court "consider[s] the factual circumstances of each case to determine whether what is claimed to be a single assaultive episode will support multiple convictions" for ADW. *Graure v. United States*, 18 A.3d 743, 761 (D.C. 2011).

> A number of factors are relevant, including (1) whether the episode consisted of distinct, successive assaults; (2) the number of individuals injured; (3) whether the defendant took a step toward effectuating physical injury (or stopped short of that, engaging only in conduct that could reasonably be expected to engender fear); and (4) whether the purpose of the relevant criminal statute is to proscribe specified conduct, or instead to protect individuals from harm.

*Id.* (footnote and internal quotation marks omitted).

In *Graure*, we held that Mr. Graure was properly convicted of four separate counts of ADW, where Mr. Graure set fire to a nightclub and the four victims at issue were forced to flee from nearby flames. 18 A.3d at 762-63. We explained that (1) the jury found that Mr. Graure "committed an act or acts tending toward corporal injury of" the four victims, *id.* at 764; and (2) the number of convictions for ADW should reflect the number of "individuals actually exposed to injury," i.e., "in the

path of physical injury," even if those individuals did not actually suffer "physical injury," *id.* at 762, 764, 765.

We reach a similar conclusion in the present case. Mr. Smith's collision with Ms. Mason's car clearly placed all three people in the car "in the path of physical injury," even though only Ms. Mason clearly suffered physical damage as a result of the collision. We therefore hold that three separate convictions for ADW were appropriate.

We are not persuaded by Mr. Smith's arguments to the contrary. First, Mr. Smith argues that there was no evidence that he knew multiple persons were in the car. We do not see any support in our cases, however, for the idea that such knowledge is necessary to support separate convictions for ADW. Moreover, it certainly was foreseeable to Mr. Smith that a car being driven on the road might well have multiple occupants.

Second, Mr. Smith relies on *Peay v. United States*, 924 A.2d 1023 (D.C. 2007). In that case, the United States conceded that only one ADW conviction was appropriate where the defendant crashed into a car occupied by multiple people. *Id.* at 1025, 1030. This court accepted the United States's concession without analyzing the issue. *Id.* at 1025. We do not view *Peay* as dispositive here. *See, e.g.*, *Briscoe v. United States*, 181 A.3d 651, 658 (D.C. 2018) (declining to treat prior decision as binding precedent, where prior decision accepted concession of party without

independently analyzing issue). We also note that the concession and decision in *Peay* predate the decision in *Graure.*

Finally, Mr. Smith attempts to distinguish *Graure* on two grounds: in *Graure* (1) the jury found that Mr. Graure intended to kill other victims, whereas there was no evidence in this case that Mr. Smith intended to injure any of the car-crash complainants; and (2) Mr. Graure made multiple attempts to start the fire, whereas Mr. Smith's collision with Ms. Mason's car was a single act. We are not persuaded that those distinctions call for a different outcome in this case. In analyzing the question whether Mr. Graure's ADW convictions merged, *Graure* did not rely on the fact that Mr. Graure had intended to kill other victims. 18 A.3d at 761-66. The court in *Graure* did mention that Mr. Graure "made distinct, successive attempts to ensure that fire would burn intensively at various points in the club." *Id.* at 762. The bulk of the discussion in *Graure*, however, was focused on the court's conclusion that the number of convictions for ADW should reflect the number of "individuals actually exposed to injury," i.e., "in the path of physical injury," even if those individuals did not actually suffer "physical injury," *id.* at 762, 764, 765. We view that conclusion as fully applicable in the present case.

## VI. Sufficiency of Evidence to Support ADW Convictions for Mr. Foster and C.M.

Mr. Smith argues that there was insufficient evidence to support his ADW convictions involving Mr. Foster and C.M. (the younger child in Ms. Mason's car).

Specifically, Mr. Smith argues that there was no evidence of a physical injury or offensive touching with respect to those two individuals. We hold that the evidence was insufficient to support these convictions.

## A. Preliminary Matters

We begin by addressing several preliminary matters. First, Mr. Smith has not argued that the evidence was insufficient to permit a reasonable factfinder to conclude that Mr. Smith used Ms. Munn's car in a way that made the car a dangerous weapon. *See, e.g.*, *Williamson v. United States*, 445 A.2d 975, 979 (D.C. 1982) (object not designed as dangerous weapon can become dangerous weapon if object is "likely to produce death or great bodily injury in the manner it is used, intended to be used, or threatened to be used") (emphasis and internal quotation marks omitted). We therefore do not address that issue.

Second, the ADW charges in this case were submitted to the jury on the theory that Mr. Smith effected a completed battery on the complainants, by "injur[ing] them." We limit our discussion of the sufficiency of the evidence accordingly, focusing only on whether the evidence was sufficient to establish a completed battery. *See generally Evans v. United States*, 122 A.3d 876, 887 (D.C. 2015) ("We cannot affirm a criminal conviction on the basis of a theory not presented to the jury.") (brackets, ellipses, and internal quotation marks omitted).

Third, the jury in this case was instructed that, for the purpose of determining whether Mr. Smith "injured" the complainants, "[i]njury means any physical injury, however small, including a touching offensive to a person of reasonable sensibility." Mr. Smith acknowledges the correctness of that principle. *See, e.g.*, *Perez Hernandez v. United States*, 286 A.3d 990, 999-1000 (D.C. 2022) (en banc) (completed battery is form of assault and can be committed by "even the slightest offensive touching, even though it causes or threatens no actual physical harm") (citations and internal quotation marks omitted). The word "injury" can also refer more narrowly, however, to physical harm or damage to a part of the body. *Injury*, *Black's Law Dictionary* (11th ed. 2019) (defining "injury" as including "real injuries (such as wounding)," as well as "verbal injuries (such as slander)" and "criminal wrongs (as with assault) or civil wrongs (as with defamation)"). To avoid ambiguity, we hereinafter use the phrase "bodily damage" when referring to damage to the body itself, such as a cut or a bruise, as opposed to offensive touchings that do not cause such bodily damage but do "offend a person's reasonable sense of personal dignity." *Perez Hernandez*, 286 A.2d at 1004.

Finally, in challenging the sufficiency of the evidence, Mr. Smith focuses almost exclusively on the argument that Mr. Foster and C.M. suffered neither bodily damage nor a touching that a reasonable person would view as offensive. Mr. Smith does note, however, that there is a question whether recklessness is an adequate

mental state to support an assault conviction where the complainant suffers no bodily damage but instead is only unintentionally touched in an offensive way. Mr. Smith nevertheless does not directly raise such an argument, apparently because Mr. Smith believes that such an argument is not available in a case in which the defendant is charged with armed rather than unarmed assault.

We ordinarily do not consider points that a party did not squarely present on appeal. *See Jones v. District of Columbia*, 996 A.2d 834, 840 (D.C. 2010). Nevertheless, "when an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Id.* (internal quotation marks omitted). For several reasons, we exercise our discretion to address the question whether recklessness is an adequate mental state to support an assault conviction where the complainant suffers no bodily damage but instead is only unintentionally touched in an allegedly offensive way. We perceive no procedural unfairness in doing so, because the court asked the parties to provide supplemental briefs addressing the decision on which we primarily rely, and because the issue was discussed at oral argument. *See id.* at 841 (court concludes that there was no procedural unfairness in addressing issue where court had given parties opportunity to address issue in supplemental briefs). Moreover, we find it difficult to determine how offensive a reckless touching would need to be in order to support

a criminal conviction for assault without first determining whether unintentional reckless offensive touchings not resulting in bodily damage can ever constitute completed-battery assault. *Cf. id.* at 840 (where issue parties did not brief is "predicate to an intelligent resolution of the question presented," it is appropriate for court to consider issue) (internal quotation marks omitted).

## B.  Analysis

We conclude that an unintentional but reckless nonsexual offensive touching of the complainant that causes no bodily damage does not constitute a completed-battery assault.  (We limit our holding and the following discussion to nonsexual offensive touchings that do not cause bodily damage, because this case does not involve a sexual touching or other forms of assault and therefore does not require us to consider the principles that might apply in such cases.)

As an initial matter, our recent en banc decision in *Perez Hernandez* is quite relevant to whether an unintentional but reckless offensive touching of the complainant that does not cause any bodily damage suffices to establish completed-battery assault.  The defendant in *Perez Hernandez* intentionally poked the complainant, but those pokes did not cause any bodily damage.  286 A.3d at 994-95. The court concluded that such conduct, when intended or known to be offensive, can constitute assault. *Id.* at 993-1006.  The court left open the question whether it would suffice that the defendant was reckless as to whether the conduct would be offensive.

*Id.* at 1003. The court in *Perez Hernandez* did not, however, leave open the question whether the defendant's touching in that case had to be intentional. Rather, the court explained that, "[i]n a case like this, making contact with a victim (the 'touching' portion of an offensive touching) cannot be inadvertent. In Model Penal Code terms, it must be the defendant's conscious object to engage in conduct of that nature." *Id.* at 1001 (footnote and internal quotation marks omitted).

We thus must determine whether this case is "like" *Perez Hernandez*, so that an intentional touching was also required in the circumstances of this case. *Perez Hernandez* was not entirely clear about what precise aspect of the case led the court to conclude that the touching had to be intentional. In describing the conduct before it, *Perez Hernandez* used at least four somewhat different descriptions: "performed with minimal force," 286 A.3d at 993; "nonviolent," *id.* at 998; "caus[ing] or threaten[ing] no actual physical harm to the victim," *id.* at 999 (internal quotation marks omitted); and "what makes the contact a crime [in this case] is the offensive nature of the touch," *id.* at 1001.

For several reasons, we hold that an intentional touching is required in cases where, as in *Perez Hernandez* and this case, the defendant's conduct caused no physical damage to the complainants' bodies, so that the conduct would constitute criminal assault solely by virtue of the offensive nature of the touching.

First, we have found no case in this jurisdiction in which a defendant has been found guilty of criminal assault based on an unintentional offensive touching that did not inflict bodily damage. More broadly, we have found no case in this jurisdiction holding a defendant liable even under civil tort law based on an unintentional offensive touching that did not inflict bodily damage.

Second, although the D.C. Council has explicitly authorized criminal liability for reckless assaultive conduct in certain circumstances, those provisions are limited to offenses in which actual bodily damage resulted. *See, e.g.*, D.C. Code §§ 22-404(a)(2) (defendant must have caused "significant bodily injury"), -404.01(a)(2) (defendant must have caused "serious bodily injury").

Third, although we have not undertaken a comprehensive examination of the law of other jurisdictions, we have found much to contradict and virtually nothing to support the proposition that criminal battery or assault can rest on unintentional offensive touchings that did not inflict bodily damage. *See, e.g.*, *Johnson v. United States*, 559 U.S. 133, 139 (2010) ("[T]he common-law crime of battery . . . consisted of the intentional application of unlawful force against the person of another."); *cf. Restatement (Second) of Torts* § 18 "Battery: Offensive Contact"), cmt. g (Am. L. Inst. 1965) ("The interest which one has in the inviolability of [one's] person, and, therefore, in freedom from unpermitted contacts which, while offensive to a reasonable sense of personal dignity[,] cause no substantial or tangible bodily harm,

is an interest of dignitary rather than of material value.  As such, it is protected only against intentional invasion.").  It does appear that Maine has enacted a statute making it a crime to "recklessly cause[] . . . offensive physical contact to another." 17-A Me. Rev. Stat. § 207 (2019).  We are not aware of any other jurisdiction that has adopted such an approach, either by statute or as a matter of the common-law of criminal assault or battery.

Fourth, criminalizing reckless but unintentional offensive touchings that do not inflict bodily damage would seemingly give the criminal assault statute a surprisingly broad scope.  For example, in response to a question at oral argument in this case, the United States suggested that it might be criminal assault to recklessly walk backwards on a sidewalk and bump into another pedestrian, even if that pedestrian suffered no bodily damage.

Fifth, we note that Mr. Smith's conduct, although not punishable as an assault on Mr. Foster and C.M., was criminally punishable as reckless driving.  *See* D.C. Code § 50-2201.04(b) ("A person shall be guilty of reckless driving if the person drives a vehicle upon a highway carelessly and heedlessly in willful or wanton disregard for the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger a person or property.").

Sixth, contrary to Mr. Smith's suggestion, we do not understand the required mental state for assault to turn on whether the defendant is charged with simple assault or ADW. *Cf., e.g.*, *Vines*, 70 A.3d at 1180 ("The four elements of ADW are simply the three elements of simple assault, plus the use of a dangerous weapon.").

Finally, we note that our holding in this case is consistent with this court's decision in *Vines*, 70 A.3d at 1179, in which the defendant's reckless driving led to a violent collision that physically injured the arm and neck of the complainant. *See Perez Hernandez*, 286 A.3d at 1003 n.20; *Vines*, 70 A.3d at 1179. As the court explained in *Perez Hernandez*, 286 A.3d at 1003 n.20, *Vines* did not hold that unintentional but reckless conduct can provide the basis for an assault conviction. Rather, *Vines* assumed that intent to injure was required and held that a reasonable factfinder could have inferred an intent to injure from Mr. Vines's reckless conduct. 70 A.3d at 1179-81. Moreover, unlike this case and *Perez Hernandez*, *Vines* involved reckless conduct that inflicted physical injuries on the complainant. *Id.* at 1179. Thus, *Vines* is consistent with the holding that, at least in circumstances like those in this case and *Perez Hernandez*, assault requires an intentional touching. To reiterate, we have no occasion in this case to decide, and we therefore express no view about, whether criminal assault can rest on an unintentional but reckless touching that causes actual bodily damage.

In sum, we hold that a conviction for completed-battery criminal assault is not established by evidence that the defendant recklessly but unintentionally caused a nonsexual offensive touching that did not inflict bodily damage. The United States has not suggested that Mr. Smith intentionally collided with Mr. Foster's car or Ms. Mason's car, nor has the United States suggested that either Mr. Foster or C.M. suffered actual bodily damage. We therefore vacate Mr. Smith's ADW conviction involving Mr. Foster (count seven) and Mr. Smith's ADW conviction involving C.M. (count nineteen). Because the sentences on those counts ran concurrently with the sentences on other counts, and neither party has requested resentencing, we remand the case for the entry of new judgment omitting counts seven and nineteen. *See, e.g.*, *Bernal*, 162 A.3d at 130 n.2.

In sum, the judgment of the Superior Court is affirmed in part and reversed in part. Specifically, we affirm Mr. Smith's convictions except for the convictions on counts seven, fifteen, and nineteen, which we reverse. We remand the case for entry of a new judgment and commitment order.

*So ordered.*