*Notice:* *This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

Nos. 20-CV-316 & 20-CV-317

LUMEN EIGHT MEDIA GROUP, LLC, APPELLANT,

V.

DISTRICT OF COLUMBIA, APPELLEE.

--------

CLPF-CC PAVILION, *et al*., APPELLANTS,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CAB-006471-16)

(Hon. Florence Y. Pan, Trial Judge)

(Argued March 30, 2022)                    (Decided August 11. 2022)

*John W. Cerreta*, of the Bars of the States of New York and Connecticut, *pro hac vice*, by special leave of the court, with whom *Steven A. Cash*, *Adam K. Grant*, of the Bar of the State of New York, *pro hac vice*, by special leave of the court, and *Christopher A. Klimmek* were on the brief, for appellant Lumen Eight Media Group, LLC.

*Philip T. Evans* was on the brief for appellants Jamal's Darth Vader, LLC, Douglas Development Corp., Western D.C. Corporate Center, and CLPF-CC Pavilion.

*Lucy E. Pittman*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General at the time the brief was filed, *Caroline S. Van Zile*, Principal Deputy Solicitor General, and *Ashwin P. Phatak*, Deputy Solicitor General, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, EASTERLY, *Associate Judge*, and FISHER, *Senior Judge*.

FISHER, *Senior Judge*: These appeals arise from a dispute about whether District of Columbia law requires appellants to obtain permits before erecting certain signs on private property, and whether the Mayor may amend the applicable regulations by promulgating an emergency rule.

Appellants Lumen Eight Media Group, LLC,[1] Jamal's Darth Vader, LLC, Douglas Development Corp., Western D.C. Corporate Center, and CLPF-CC Pavilion (collectively, "Lumen Eight" or "appellants") appeal from an order granting summary judgment to the District of Columbia ("the District"). In doing so, the Superior Court rejected appellants' arguments that the emergency rule issued by the City Administrator[2] was invalid. Before addressing that question, we first must

---

[1] Lumen Eight Media Group, LLC previously was known as Digi Media Communications, LLC.

[2] The City Administrator acted pursuant to authority delegated to him by the Mayor. *See* 62 D.C. Reg. 826 (Jan. 16, 2015).

identify the source of authority for issuing regulations governing the erection and maintenance of signs.

The District argues that D.C. Code § 6-1409, which governs amendments to the Construction Codes, gives the Mayor such authority. Appellants rely upon a different statute, part of the Sign Regulation Act, which states that "[t]he rules shall not take effect until approved by the Council." D.C. Code § 1-303.21(a). We agree with appellants that § 1-303.21 governs and that the requirements of that statute render the emergency rule invalid. Accordingly, we reverse the trial court's order and remand the case for the court to resolve whether the Legacy Rule (the rule in effect before the emergency rule was issued) required Lumen Eight to obtain permits before erecting certain signs at issue in this litigation—signs erected under building overhangs. We do not entertain appellants' belated argument that the final rule is invalid.[3]

## I. Factual Background

---

[3] We refrain from addressing this untimely claim out of concern for procedural fairness to the District. Neither in the trial court proceedings, nor in their principal briefing on appeal, did appellants claim that the final rule was invalid. Indeed, appellants raised the issue for the first time in their *supplemental* reply brief.

This litigation arose from Lumen Eight's plans to install light-emitting diode ("LED") advertisements in several locations in the District of Columbia without obtaining permits from the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA").[4]  Two types of signs were at issue before the trial court: (1) signs installed under the overhangs of buildings, such as signs under "an open-walled roof over a driveway, of the sort typically seen at a hotel entrance" (hereinafter, "signs under building overhangs"), and (2) signs located inside a building that are set back more than 18 inches from a window or door, but are visible from other properties (hereinafter, "externally visible signs").[5]

The regulations in Appendix N of the Construction Codes generally require permits for "outdoor display signs and other forms of exterior advertising." 12-A D.C.M.R. §§ N101.1, N101.3 (2014).  However, at the time of the events of

[4] At the time of the summary judgment briefing, Lumen Eight planned to install a total of 43 signs at 17 locations in the District.

[5] The first category of signs is described in the trial court's order and the District's brief as "outdoor signs," and referenced in shorthand in the order as "exterior signs."  The second category of signs is described by the trial court as "indoor signs," and referenced in shorthand as "glassed-in signs."  Because the parties dispute whether or not the signs at issue in this litigation constitute "outdoor" or "exterior" signs, we do not adopt the terms used by the trial court, and use our own terms instead.

this case, Appendix N contained an exemption for "[a]ny sign located within a building, not attached directly or painted on a window, and not located within 18 inches (457 mm) of a window or entrance." *Id.* at § N101.3.5.3 (2014) (the "Legacy Rule"). Purporting to rely on this "within a building" exemption, Lumen Eight did not seek permits for either its signs under building overhangs,[6] or its externally visible signs.[7]

The "within a building" exemption had been of concern to the District for several years. On October 31, 2011, Mayor Vincent Gray established a multi-agency working group to review the District's sign rules and propose revisions to them. *See* 58 D.C. Reg. 9416 (Nov. 4, 2011). In order to provide the Mayor with authority to issue the new regulations once they were completed, the Council enacted the "Sign Regulation Authorization Amendment Act of 2012" (hereinafter, the "Sign Regulation Act"). *See* D.C. Law 19-289 (Apr. 27, 2013), 60 D.C. Reg. 9531 (June 28, 2013). The sign regulations were to be a "comprehensive final rulemaking

---

[6] Lumen Eight contended that the phrase "within a building" encompasses signs "within the footprint" of a building, and that its signs under building overhangs are thus "within a building."

[7] While the applicability of the "within a building" exemption to the externally visible signs was disputed in the trial court proceedings, the trial court held that the Legacy Rule did not require permits for the externally visible signs, and the parties do not dispute that ruling.

governing signs on public space and private property." *Id.* at § 10. Section 1(a) of the Act, which is codified as § 1-303.21(a), states as follows:

> The Mayor shall issue, amend, repeal and enforce rules governing the hanging, placing, painting, projection, display, and maintenance of signs on public space, public buildings, or other property owned or controlled by the District and on private property within public view within the District. The proposed rules shall be submitted to the Council for a 45-day period of review, excluding Saturdays, Sundays, legal holidays, and days of Council recess. If the Council does not approve or disapprove the proposed rules, in whole or in part, by resolution within this 45-day review period, the proposed rules shall be deemed disapproved. The rules shall not take effect until approved by the Council.

*Id.* at § 1(a); D.C. Code § 1-303.21(a). Notably, § 1-303.21(a) does not contain any express reference to the District of Columbia Administrative Procedure Act ("DCAPA"), or its emergency rulemaking provision, D.C. Code § 2-505(c), and requires affirmative approval by the Council. *See id.* (stating that "[i]f the Council does not approve or disapprove the proposed rules, . . . the proposed rules shall be deemed disapproved" and "[t]he rules shall not take effect until approved by the Council"). Although the anticipated comprehensive sign regulations were never finalized,[8] some portions of the Sign Regulation Act did become effective, including

---

[8] The Mayor twice issued proposed regulations which would have consolidated the District's sign regulations into a new Title 13 of the District of Columbia Municipal Regulations (D.C.M.R.), but neither proposal became a final rule. *See* 59 D.C. Reg. 10022 (Aug. 17, 2012); 62 D.C. Reg. 2015 (Feb. 13, 2015).

Section 1(a), excerpted above, which established procedures for issuing and amending rules.

In 2015, officials again discussed an amendment to the Legacy Rule, and on December 17, 2015, they formulated a proposal to make that change. The initial plan was to issue a notice of proposed rulemaking, with the normal delay for comments, and efforts to proceed on that basis were underway as of June 21, 2016. However, after learning that Lumen Eight had begun executing its plan to install digital signs in several locations in the District, the City Administrator decided to issue an emergency rule to take effect immediately. The purpose of the emergency rule, according to the District, was to "clarify[] [that] the existing regulations" (i.e., the Legacy Rule) required permits both "for exterior signs within a building's footprint and for interior signs visible from the exterior of a building." On July 12, 2016, the City Administrator announced the emergency rule and an identical proposed final rule.[9] *Notice of Emergency and Proposed Rulemaking*, 63 D.C. Reg. 11000 (Aug. 26, 2016). Under the emergency rule, only signs "entirely inside a building" were exempt from the general permit requirements for outdoor signs contained in Appendix N. *Id.* However, permits *were* required for signs which

---

[9] As of this date, Lumen Eight had not installed any signs.

"contain[] writing that is legible, or an image that is clearly discernible, from property other than the property on which the sign is located," even if the signs were "entirely inside a building." *Id.* (brackets added). The Notice of Emergency and Proposed Rulemaking (the "Notice") explained the District's intention "to regulate such signs as exterior signs under Appendix N," and further stated that "[t]he emergency rulemaking is necessary to ensure that unpermitted, quasi-exterior signage does not proliferate across the District." *Id.* Pursuant to § 2-505(c), the emergency rule was to remain in effect for only 120 days.[10]

The Notice cited § 6-1409, not § 1-303.21, as authority for the rulemaking. *See* 63 D.C. Reg. 11000. Section 6-1409(a) states, in relevant part, as follows:

---

[10] Section 2-505(c) states as follows:

> Notwithstanding any other provision of this section, if, in an emergency, as determined by the Mayor or an independent agency, the adoption of a rule is necessary for the immediate preservation of the public peace, health, safety, welfare, or morals, the Mayor or such independent agency may adopt such rules as may be necessary in the circumstances, and such rule may become effective immediately. Any such emergency rule shall forthwith be published and filed in the manner prescribed in subchapter III of this chapter [D.C. Code § 2-551 *et seq.*]. No such rule shall remain in effect longer than 120 days after the date of its adoption.

D.C. Code § 2-505(c) (brackets added).

The Mayor may issue proposed rules to amend the Construction Codes and to adopt new supplements and editions of the Model Codes in whole or in part pursuant to subchapter I of Chapter 5 of Title 2. The proposed rules shall be submitted to the Council for a 45-day period of review, excluding Saturdays, Sundays, legal holidays, and days of Council recess. If the Council does not approve or disapprove the proposed rules, in whole or in part by resolution within this 45-day review period, the proposed rules shall be deemed approved. The rules shall not take effect until approved or deemed approved by the Council.

D.C. Code § 6-1409(a). This statute does not refer to signs specifically, but rather "to amend[ing] the Construction Codes." Unlike § 1-303.21(a), § 6-1409 makes explicit reference to the DCAPA (although it does not expressly mention the provisions for emergency rulemaking). *See id.* ("The Mayor may issue proposed rules . . . pursuant to subchapter I of Chapter 5 of Title 2 [i.e., the DCAPA]") (brackets added). Another key difference between the two statutes is that § 6-1409 only requires that the Council have 45 days to review the proposed rule; a rule shall take effect as long as the Council does not disapprove it during the review period, whereas § 1-303.21 requires the Council's affirmative approval. *Compare* D.C. Code § 6-1409(a) (stating that "[i]f the Council does not approve or disapprove the proposed rules, . . . the proposed rules shall be deemed approved") *with* D.C. Code § 1-303.21(a) (stating that "[i]f the Council does not approve or disapprove the proposed rules, . . . the proposed rules shall be deemed disapproved").

On October 18, 2016, the Mayor submitted the proposed rule to the Council for its review. The Council neither approved nor disapproved the proposal and, pursuant to § 6-1409(a), the proposed rule "was deemed approved" on January 18, 2017. Meanwhile, the City Administrator issued two more emergency rules, once on November 4, 2016, "to allow the Council to complete its consideration of the proposed rules," *Notice of Emergency Rulemaking*, 63 D.C. Reg. 13718 (Nov. 4, 2016) and again on March 3, 2017. *See Notice of Emergency Rulemaking*, 64 D.C. Reg. 2407 (Mar. 3, 2017). The final rule was published in the D.C. Register on June 30, 2017, superseding the third emergency rule. *See Notice of Final Rulemaking*, 64 D.C. Reg. 6105 (June 30, 2017).

## II. Procedural History

On August 31, 2016, the District filed the instant lawsuit seeking injunctive relief against Lumen Eight and the owners of the buildings with whom Lumen Eight had contracted to display the signs. The District's complaint was accompanied by a motion for a temporary restraining order and a motion for a preliminary injunction ordering Lumen Eight to stop installing its signs; the preliminary injunction was granted, and the motion for a temporary restraining order was denied as moot. Lumen Eight's Answer and Counterclaim alleged, among other things, that the

emergency rule was invalid.  Following the completion of discovery, the parties filed cross motions for summary judgment.

In their summary judgment briefing, the parties disputed the meaning of the phrase "within a building" contained in the Legacy Rule.  Appellants contended that signs installed under building overhangs qualify for the "within a building" exemption because they are "within the footprint" of the buildings, while the District contended that such signs are not exempt because the plain meaning of "within a building" is "inside" of a building.  The parties also disputed whether the text of § 6-1409(a) precludes resort to emergency rulemaking, whether the emergency rule had been promulgated in compliance with the DCAPA, and whether the language of § 2-505(c) limiting emergency rules to a period of 120 days rendered the multiple, successive emergency rules invalid as well.

In its order dated March 9, 2020, the trial court determined that the emergency rule was valid.  The court interpreted § 2-505(c)'s emergency rulemaking provision as allowing the government to bypass the requirements in § 6-1409(a) that there be a 45-day review period and that "[t]he rules shall not take effect until approved or

deemed approved by the Council."[11]    The court also held that the City Administrator's determination of an "emergency" under § 2-505(c) was entitled to deference, and that the administrative record on which the City Administrator could rely when evaluating whether there was an emergency includes "all of the relevant information considered by the District, broadly defined, at the time that the Emergency Rule was enacted."    The trial court also determined that the two successive emergency rules issued after the first one were valid, stating that Lumen Eight had cited no legal support for its assertion that successive emergency rulemakings were disallowed.[12]

Based on these determinations, the trial court concluded that the emergency rules required Lumen Eight to obtain permits, and the court did not need to reach the issue of whether signs under building overhangs fell under the "within a building" exemption contained in the Legacy Rule.

---

[11] More specifically, the trial court reasoned that the requirement in § 6-1409 that "proposed" rules be submitted to the Council for a 45-day period of review does not apply to emergency rules promulgated under § 2-505(c), because they are exempt from the "normal process" whereby the government "'proposes' the rule and solicits comments"; emergency rules "need not be 'proposed' to anyone."

[12] The trial court also rejected three additional arguments by appellants that they have not raised on appeal.  Specifically, the trial court rejected appellants' arguments that the emergency rule was not validly adopted under the DCAPA, that the emergency rule was not published forthwith, as required by the DCAPA, and that Lumen Eight had a vested right to install its signs.

These consolidated appeals followed. In the initial briefing, the debate centered on the proper interpretation of § 6-1409, specifically, whether invocation of the emergency rulemaking procedures set out in § 2-505(c) creates an exception to § 6-1409's requirement that the rule be subject to a 45-day period of review and be "approved or deemed approved by the Council" before it can take effect. We subsequently issued an order requesting the parties to submit supplemental briefs addressing whether § 1-303.21 applies to the rulemaking challenged here.[13]

## III.  Discussion

In their supplemental briefs, appellants contend that the provisions of § 1-303.21, not those found in § 6-1409, govern the District's attempt to amend the Legacy Rule. They further assert that § 1-303.21 renders the emergency rule invalid, as it prohibits amendment of the rules regulating signs without affirmative Council approval, which this rule indisputably did not receive. Even if § 1-303.21 does not

---

[13] The comprehensive sign regulations that the Mayor twice proposed (see note 7, *supra*) would have, among several other changes, eliminated the "within a building" exemption. *See* 59 D.C. Reg. 10022; 62 D.C. Reg. 2015. Both notices of proposed rulemaking cited § 1-303.21 and the Sign Regulation Act as the substantive authority for the rulemaking.

*control*, appellants argue that its provisions should inform our interpretation of § 6-1409, which states in its concluding sentence that "[t]he rules shall not take effect until approved or deemed approved by the Council."

The District claims that by failing to raise the issue in either the trial court proceedings or in their principal briefing on appeal, appellants have forfeited their argument that § 1-303.21 precludes the issuance of the emergency rule. Even if the argument is not forfeited, the District contends, § 6-1409 controls because § 1-303.21 applies only to the issuance of rules pertaining to outdoor signs, and § 6-1409(a) allows amendments to the Construction Codes without affirmative Council approval. We need not decide whether § 6-1409 would permit amendments without Council approval because we agree with appellants that § 1-303.21 governs the issuance of the rules challenged in this case, and that its provisions render the emergency rule invalid.

## A. Standard of Review

We review a trial court's grant of summary judgment de novo. *Ukwuani v. District of Columbia*, 241 A.3d 529, 541 (D.C. 2020). In doing so, "we conduct an independent review of the record, and our standard of review is the same as the trial

court's standard in considering the motion for summary judgment." *Critchell v. Critchell*, 746 A.2d 282, 284 (D.C. 2000) (citing *Sherman v. District of Columbia*, 653 A.2d 866, 869 (D.C. 1995)).

In this case, we do not confront a debate about whether there is a genuine dispute of material facts, but rather questions of statutory interpretation, which we review de novo. *Thomas v. United States*, 171 A.3d 151, 153 (D.C. 2017). "We begin by looking first to the plain language of the statute to determine if it is clear and unambiguous." *Lopez-Ramirez v. United States*, 171 A.3d 169, 172 (D.C. 2017) (quoting *Peterson v. United States*, 997 A.2d 682, 684 (D.C. 2010)). "We are mindful, however, that '[s]tatutory interpretation is a holistic endeavor[.]'" *Id.* (brackets in original) (quoting *Tippett v. Daly*, 10 A.3d 1123, 1127 (D.C. 2010) (en banc)). "In determining the correct reading of statutory language, we consider statutory context and structure, evident legislative purpose, and the potential consequences of adopting a given interpretation." *In re G.D.L.*, 223 A.3d 100, 104 (D.C. 2020) (citing *J.P. v. District of Columbia*, 189 A.3d 212, 219 (D.C. 2018)). "We may also look to the legislative history to ensure that our interpretation is consistent with legislative intent." *Facebook, Inc. v. Wint*, 199 A.3d 625, 628 (D.C. 2019) (brackets omitted) (quoting *Thomas v. Buckley*, 176 A.3d 1277, 1281 (D.C. 2017)).

## B. Appellants Have Not Forfeited Their Right to Rely on § 1-303.21

"[W]hen an issue or claim is properly before the court, the court . . . retains the independent power to identify and apply the proper construction of governing law." *Jones v. District of Columbia*, 996 A.2d 834, 840 (D.C. 2010) (quoting *United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993)). Although we raised the potential applicability of § 1-303.21 *sua sponte*, it is proper for us to determine whether that statute governs the rulemaking challenged in this case and, if so, whether the rulemaking violates its provisions. It is not procedurally unfair to do so "because we invited, and received, supplemental briefs from the parties." *Wall v. Babers*, 82 A.3d 794, 797 n.7 (D.C. 2014).[14] Moreover, the question is too important to overlook because determining which D.C. Code provision applies "is antecedent to . . . and ultimately dispositive of" whether the trial court's judgment may stand. *Jones*, 996 A.2d at 840 (ellipsis in original) (quoting *United States Nat'l Bank of Or.*, 508 U.S. at 447).

---

[14] Because the issue we are addressing is purely one of statutory construction, the District does not claim that it was prejudiced by the failure to develop a factual record on the issue.

Additionally, it not only would set a bad legal precedent, but also would thwart the intent of the legislature, to rely on a statute that does not apply, simply because the parties failed to identify the correct one, inadvertently or not. Finally, an evaluation of whether § 1-303.21 applies instead of § 6-1409 may serve the important value of judicial restraint; a determination that § 1-303.21 applies might allow us to avoid the broader question of whether the Construction Codes as a whole (which extend well beyond the regulation of signs) may be amended by emergency rulemaking. A negative answer to that question could have far-reaching effects upon the regulation of construction activity in the District.[15]

## C. Section 1-303.21 Applies to this Case

The District argues that § 1-303.21 does not apply to the signs or rules at issue in this litigation "because it does not apply to interior signs." Instead, the District asserts, § 6-1409 governs rulemaking related to interior signs. We are not persuaded.

---

[15] We find unpersuasive the District's argument that we should not permit appellants to rely on § 1-303.21 because doing so is inconsistent with their "theory of the case . . . that [their] proposed signs do not require a permit because they would be 'within a building,'—that is, because they are *interior* signs." The District itself seems to be arguing inconsistently by shunning the application of § 1-303.21 while insisting that signs installed under building overhangs are not "within a building"— that they are, instead, outdoor signs.

When one focuses on the language of the statutes and rules, the regulatory world is not so neatly bifurcated.

To be sure, § 1-303.21 is contained in Part B of Title 1, Chapter 3, Subchapter II, of the D.C. Code, and Part B is titled "Outdoor Signs." But that label does not alter the text of the statute, which is not strictly limited to signs that are located outdoors. Section 1-303.21(a), the codified version of Section 1(a) of the Sign Regulation Act, states, in relevant part, that "[t]he Mayor shall issue, amend, repeal and enforce rules governing the hanging, placing, painting, projection, display, and maintenance of signs on public space, public buildings, or other property owned or controlled by the District *and on private property within public view* within the District." D.C. Law 19-289, § 1(a) (emphasis added); D.C. Code § 1-303.21(a) (emphasis added). Section 2 of the Sign Regulation Act describes the Act's purpose as "regulat[ing] the erection, hanging, placing, painting, display, and maintenance of outdoor signs *and other forms of exterior advertising* within the District of Columbia . . . ." *Id.* at § 2 (brackets and emphasis added).

Moreover, the emergency rule at issue here clearly was designed to clarify the Legacy Rule. Although that provision nominally applies to signs "within a building," § N101.3.5.3 (2014), it is located within section N101 of Appendix N of

Title 12, Subtitle A, of the D.C.M.R. Subsection N101.1 specifies that "[t]his section shall govern the erection, hanging, placing, painting, display, and maintenance of outdoor display signs and other forms of exterior advertising." This language places the Legacy Rule within the intended reach of § 1-303.21.

Furthermore, the emergency amendment to the Legacy Rule was not limited to interior signs, but addressed the distinction between indoor and outdoor signs. As explained by the District in its principal briefing on appeal, the emergency rule "clarif[ied] that permits are required for exterior signs within a building's footprint and for interior signs visible from the exterior of a building." The text of the emergency rule states that the "within a building" exemption does not apply unless a sign is "located entirely inside a building." 63 D.C. Reg. 11000. In other words, signs installed under building overhangs are to be treated as "outdoor" signs.

Moreover, even a sign "located entirely inside a building" requires a permit if it "contains writing that is legible, or an image that is clearly discernible, from property other than the property on which the sign is located." 12-A D.C.M.R. §§ N.101.3.5, N.101.3.5.3 (2017). Such signs are subject to the general permit requirements for "outdoor signs and other forms of exterior advertising" contained in Appendix N. *Id.* at § N101.1. The Notice of Emergency

and Proposed Rulemaking further explains the District's intention "to regulate such signs as *exterior signs*," in order to ensure "that unpermitted *quasi-exterior signage* does not proliferate across the District." 63 D.C. Reg. 11000 (emphases added).

We also emphasize that the signs at the heart of this litigation—the signs to be placed under building overhangs—are what the District's own principal brief on appeal describes as "outdoor signs." This characterization further supports our conclusion that the emergency rule—which indisputably addresses the status of these signs—falls within the ambit of § 1-303.21(a). Indeed, the District's current argument that the rulemaking is governed by § 6-1409 because the emergency rule "added a permit requirement for certain interior signs . . . and left in place the longstanding permit requirement for exterior signs," undercuts its previous argument that the trial court properly relied upon the emergency rule because it clarified the status of exterior signs erected within a building's footprint.

In sum, we conclude that § 1-303.21 applies to this case.

**D. Section 1-303.21 Governs the Issuance of the Emergency Rule**

Our determination that § 1-303.21 encompasses the rulemaking at issue in this litigation is not, however, necessarily dispositive of whether § 1-303.21 *governs* that

rulemaking. As both parties acknowledge, the Sign Regulation Act was also meant to remove the regulation of exterior signs from the Construction Codes altogether. *See* D.C. Law 19-289, § 3 (stating that D.C. Code § 6-1403(a)(1) "is amended by striking the phrase 'signs, advertising devices' and inserting the phrase '*interior* signs and advertising devices' in its place") (emphasis added). However, that provision of the Act never went into effect.[16] In May 2016, the Construction Codes Harmonization Amendment Act, D.C. Law 21-118 (May 18, 2016), 63 D.C. Reg. 4645 (Apr. 1, 2016), arguably narrowed the reach of the Construction Codes from "signs" generally to "*interior* signs or other items as specified in the Construction Codes." *Id.* at § 5(b) (emphasis added); D.C. Code § 6-1403(b) (emphasis added). While this language went into effect immediately, it is not clear whether it did in fact remove the regulation of exterior signs from the Construction Codes. For example, Appendix N, which "govern[s] the erection, hanging, placing, painting, display, and maintenance of outdoor display signs and other forms of exterior advertising," 12-A D.C.M.R. § N101.1 (2017), remains in the Construction

---

[16] Section 10 of the Sign Regulation Act states that certain provisions, including Section 3 of the Act (which contains the operative language limiting the scope of the Construction Codes to interior signs) "shall not apply until the Mayor's issuance of a comprehensive final rulemaking governing signs on public space and private property pursuant to section 2." D.C. Law 19-289, § 10. As stated above, no comprehensive set of rules has been issued and, hence, the provision of the Sign Regulation Act removing the regulation of exterior signs from the scope of the Construction Codes has not gone into effect.

Codes, and § 6-1409(a), which the District contends applies to the rulemaking at issue in this case, outlines the procedure for the Mayor to "issue proposed rules to amend the Construction Codes . . . ." D.C. Code § 6-1409(a).

However, we need not resolve whether the May 2016 amendment removed the regulation of exterior signs from the Constructions Codes because, even if we assume that it did not, and that both § 1-303.21 and § 6-1409 might deal with rulemaking concerning exterior signs, we would still find that § 1-303.21 governs the rulemaking being challenged here.

Where two statutes appear to conflict with each other, we must first attempt to harmonize them. *See Speyer v. Barry*, 588 A.2d 1147, 1163 (D.C. 1991) (explaining that "courts choose the specific statute over the general one only if the two cannot be harmonized, and not otherwise") (collecting authorities). Here, there clearly is a conflict between the provisions of § 1-303.21 and § 6-1409 that might affect our case. Section 6-1409(a) allows passive review by the Council, stating that, following the 45-day period of review, "[i]f the Council does not approve or disapprove the proposed rules, . . . the proposed rules shall be deemed approved." D.C. Code § 6-1409(a). In direct contrast, § 1-303.21(a) requires actual approval by the Council, stating that, "[i]f the Council does not approve or disapprove the

proposed rules" during the 45-day period of review, "the proposed rules shall be deemed *disapproved*." D.C. Code § 1-303.21(a) (emphasis added). The legislative history of § 1-303.21 reveals the reason for the difference. The original text of § 1-303.21(a) tracked the language of § 6-1409(a), requiring only passive review, but the language was changed to require affirmative approval in response to "concerns . . . that these rules were too important for the Council not have [sic] an opportunity to approve or disapprove them." Committee Report at 5. Councilmember Bowser, who expressed the concerns, made an oral motion to amend, which the Council approved unanimously. *Id.*

Apart from the District's argument that the statutes do not conflict because they operate in different spheres (which we have just rejected), we do not see a way of reconciling them. Because it refers to the DCAPA, § 6-1409(a) arguably permits emergency rulemaking. Section 1-303.21(a) contains no such reference. Moreover, the statutes conflict on a crucial question: the effect of inaction by the Council following the 45-day review period, as occurred with respect to the proposed final rulemaking in this case. Section 1-303.21(a) would require that the rule be deemed disapproved, whereas § 6-1409(a) would require that the rule be deemed approved. In light of these fundamental differences, the two statutes cannot be reconciled.

In the face of this irreconcilable conflict, we agree with appellants that § 1-303.21 controls. "This court has often recognized the well-settled rule of statutory construction that a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms." *George Washington Univ. v. D.C. Bd. of Zoning Adjustment*, 831 A.2d 921, 943 n.18 (D.C. 2003) (quoting *Onabiyi v. D.C. Taxicab Comm'n*, 557 A.2d 1317, 1319 (D.C. 1989)). "This is particularly true where, as here, the more specific statute was enacted after the general one." *Id.*

Section 6-1409 covers the issuance of rules "to amend the Construction Codes," whose broad scope, as articulated in section 6-1403, ranges from "[m]atters concerning the construction, . . . use, location, equipment, occupancy, and maintenance of all buildings, structures and premises in the District" to "[t]he design . . . or use of aquatic vessels." D.C. Code § 6-1403(a); *see also* 12-A D.C.M.R. § 101A (stating that the Construction Codes include, among other things, the Fuel Gas Code, the Electrical Code, the Plumbing Code, and the Energy Conservation Code). While the scope of the Construction Codes includes the placing and maintenance of interior signs, *see* D.C. Code § 6-1403(b), § 6-1409 says nothing specific about signs. By contrast, § 1-303.21 targets rulemaking related to signs, specifically, "the hanging, placing, painting, projection, display, and

maintenance of signs on public space, public buildings, or other property owned or controlled by the District and on private property within public view within the District." D.C. Code § 1-303.21(a). The amendments to the Legacy Rule, which have been challenged here, fit comfortably within this language. Moreover, § 1-303.21 was enacted in 2013, over twenty-five years after § 6-1409 was enacted in 1987. *See* D.C. Law 6-216, § 10 (Mar. 21, 1987), 34 D.C. Reg. 1072 (Feb. 13, 1987). Thus, we conclude that § 1-303.21 governs the rulemaking at issue in this case.

### E. Section 1-303.21 Renders the Emergency Rule Invalid

Finally, we address whether the emergency rule is invalid. We have no trouble concluding that it is, because it did not receive the Council's affirmative approval, as expressly required by § 1-303.21(a). Moreover, the statute contains no reference to emergency rulemaking, which might arguably allow the District to bypass temporarily the requirement of affirmative approval.[17]

---

[17] One of the purposes of the Sign Regulation Act was to transfer rulemaking authority concerning signs from the Council to the Mayor. Committee Report at 15 ("Section 2(a) would replace language in section 1 of the Sign Act [Pub. L. No. 71-786, Chap. 399, 46 Stat. 1486 (Mar. 3, 1931)] giving rulemaking authority over signs to the Council and transfer this authority to the Mayor"). At the same time, the statute makes clear that the Mayor may not act alone. *See* D.C. Code

*****

For the foregoing reasons, the trial court's order granting summary judgment to the District is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So Ordered.*

---

§ 1-303.21(a) ("The proposed rules shall be submitted to the Council for a 45-day period of review . . . [i]f the Council does not approve or disapprove the proposed rules . . . the proposed rules shall be deemed disapproved . . . [t]he rules shall not take effect until approved by the Council").  As we have explained in the text, we do not find in § 1-303.21 itself any authority for the Mayor to issue emergency rules relating to signs.  Although the Home Rule Act gives the Council general authority to enact emergency *legislation* in appropriate circumstances, *see* D.C. Code § 1-204.12(a), the District has not suggested that the Mayor or her delegate has general authority to promulgate emergency rules.