In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-2906

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRIAN BROADFIELD,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 13-10055 — **Michael M. Mihm**, *Judge.*

ARGUED JULY 7, 2021 — DECIDED JULY 21, 2021

Before EASTERBROOK, KANNE, and KIRSCH, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Contending that his asthma and other breathing issues put him at extra risk should he contract COVID-19 while in prison, Brian Broadfield applied to the district court for compassionate release under 18 U.S.C. §3582(c)(1)(A). For a prisoner who is younger than 70, this relief depends on a finding that "extraordinary and compelling reasons warrant such a reduction" (§3582(c)(1)(A)(i)).

The district court denied the application, giving three reasons. First, the judge found that Broadfield's documented medical conditions do not include asthma and that his wheezing appears to be the result of allergies rather than a chronic breathing problem. Second, the judge remarked that Broadfield has had multiple disciplinary problems in prison, leading to the loss of 27 days' good time. The judge stated that this implies an elevated risk of recidivism. Finally, the judge wrote:

> Defendant is also a career offender with convictions for both weapons and drug offenses. He also … received a six-level enhancement for manufacturing methamphetamine where children were present. Accordingly, the Court is unable to determine that Defendant is not a danger to his community as is required under the Compassionate Release statute.

2020 U.S. Dist. LEXIS 176175 *6 (C.D. Ill. Sept. 24, 2020). Broadfield's appellate brief concentrates on this third part of the district court's explanation.

Despite what the judge wrote, Broadfield has not been convicted of a weapons offense. And §3582(c)(1)(A) does not make a judicial finding of non-dangerousness essential to compassionate release. All the statute requires is a finding of "extraordinary and compelling reasons" plus consideration of any sentencing factors under 18 U.S.C. §3553(a) that are pertinent to the prisoner's circumstances. Dangerousness is among the conditions that the Sentencing Commission requires a court to consider when the Bureau of Prisons seeks a person's compassionate release, but we held in *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), that this proviso does not apply to prisoner-initiated applications, unless or until the Sentencing Commission revises the Guidelines to make it applicable.

Broadfield wants us to remand with instructions to reconsider now that these misunderstandings have been cleared away. But a remand would be appropriate only if reconsideration could produce a decision in Broadfield's favor, and it could not. When Broadfield filed his application for compassionate release, and when the district judge denied it, COVID-19 was a grave problem in America's prisons, where people cannot engage in social distancing. Today, however, effective vaccines are available. The Bureau of Prisons' policy statement—*COVID-19 Vaccine Guidance* (Mar. 11, 2021)—says that prisoners will be offered a vaccine in order of risk as soon as vaccines have been offered to all staff members. That condition was satisfied months ago, and prisoners are regularly vaccinated. The Bureau of Prisons reports that 1,300 prisoners at FCI Seagoville, where Broadfield is confined, have been fully vaccinated against COVID-19. See https://www.bop.gov/coronavirus/. This is short of the prison's full population of roughly 1,700, but some may have been vaccinated before arrival, while others may have declined the opportunity.

Broadfield has not contended that he wants to be vaccinated but that the Bureau of Prisons has failed to inoculate him. Because risk of COVID-19, which can bear especially hard on people with pre-existing breathing conditions, is Broadfield's sole reason for seeking compassionate release, a remand would be pointless. Vaccinated prisoners are not at greater risk of COVID-19 than other vaccinated persons. (A more cautious statement would be that published data do not establish or imply an incremental risk for prisoners—either a risk of contracting the disease after vaccination or a risk of a severe outcome if a vaccinated person does contract the disease.) And a prisoner who remains at elevated risk because he

has declined to be vaccinated cannot plausibly characterize that risk as an "extraordinary and compelling" justification for release. The risk is self-incurred.

In a supplemental filing after oral argument, Broadfield informed us that he was offered a vaccine but declined. He maintains that he fears an allergic reaction, but he does not contend that he has suffered such a reaction to any other vaccine. The Bureau of Prisons' policy statement provides that prisoners with a history of allergic reactions to vaccines will receive extra evaluation before vaccination and additional observation afterward, but Broadfield does not come within this category. He says that he has had an allergic reaction to two drugs (penicillin V and bupropion) and contends that this experience may show that he is allergic to polyethylene glycol, a component of both mRNA vaccines, or polysorbate, a component of the Johnson & Johnson vaccine. But he does not contend that other people who have allergies to penicillin or bupropion have fared poorly after being vaccinated. None of the FDA, the CDC, or the WHO treats an allergy to penicillin or bupropion as a reason not to receive any of the COVID-19 vaccines. Instead they recommend (and the Bureau of Prisons provides) a 15-to-30-minute observation period after the injection so that allergic reactions may be detected and treated. The federal judiciary need not accept a prisoner's self-diagnosed skepticism about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the responsible agencies all deem vaccination safe and effective.

Section 3582(c)(1)(A) was enacted and amended before the SARS-CoV-2 pandemic, and it will continue to serve a beneficent function long after the pandemic ends. But for the many prisoners who seek release based on the special risks created

by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.

AFFIRMED