NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals
**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 16, 2021*
Decided November 29, 2021

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-1238

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
| *v.* | No. 3:05-CR-131-RLM-1 |
| BERNARD ELLIS, <br> *Defendant-Appellant*. | Robert L. Miller, Jr., <br> *Judge*. |

**O R D E R**

Fifteen years into a 40-year sentence for firearms offenses, Bernard Ellis moved for compassionate release, citing risks from COVID-19 because of chronic health issues. The district court accepted that Ellis's medical conditions during the pandemic presented an "extraordinary and compelling reason" to reduce his sentence, *see* 18

---

* We granted the parties' joint motion to waive oral argument, and the appeal is therefore submitted on the briefs and the record. FED. R. APP. P. 34(a)(2)(C).

U.S.C. § 3582(c)(1)(A)(i), but denied the motion based on the seriousness of his crimes and the potential danger he posed to the public. We affirm.

In the late 1990s, Ellis was the chief enforcer in Chicago for the Gangster Disciples. In this role, he unlawfully acquired handguns and semiautomatic rifles in Indiana, allegedly to use himself or to provide to fellow gang members. Because Ellis was a convicted felon (he had prior convictions for armed robbery), he induced several women to illegally "straw purchase" firearms on his behalf, sometimes with the threat of violence.

Ellis was ultimately convicted of multiple counts relating to straw purchases of firearms and to his possession of firearms as a felon. The district court sentenced him to 480 months in prison, within the 360 months-to-life guidelines range, based on his "long history of violence" and "an extraordinary need to protect the public from Mr. Ellis's future crimes." After we reversed one of his firearm-possession counts on appeal, *see United States v. Ellis*, 622 F.3d 784 (7th Cir. 2010), the district court resentenced him in 2011 to an identical term of imprisonment because of his "extraordinarily violent past," his role in the Gangster Disciples, and the seriousness of his crimes.

In late 2020, Ellis, then housed at the Grady County Jail, moved for compassionate release in the form of home confinement. He pointed out that he was 54 years old, obese, diabetic, and suffered from hypertension—all factors that the Centers for Disease Control have identified as increasing one's susceptibility to risks from COVID-19.

The district court denied Ellis's motion. The court acknowledged that his poor health presented an "extraordinary and compelling" reason for a sentence reduction during the pandemic, but concluded that his release would be inappropriate in light of the sentencing factors set forth in 18 U.S.C. § 3553(a). Most pertinent in the court's assessment was the need for the sentence to reflect his "frightful history of violence," the seriousness of his crimes, and a less-than-exemplary prison disciplinary record that reflected the need to protect the public. The court found that these factors outweighed positive aspects in this record—his participation in training programs, his "clean" disciplinary record since 2016, and his "law-abiding" conduct when he was mistakenly released from custody for a brief time in July 2020.

On appeal, Ellis challenges the denial of his motion for compassionate release, arguing that the district court erred in its analysis of the § 3553(a) factors. He argues that the court made inconsistent statements when it determined, for instance, that he remains a danger to the public, despite "conclud[ing] time and time again that Mr. Ellis is a changed man." He also highlights the court's comment that his law-abiding conduct during his mistaken release in 2020 "doesn't suggest a person who poses a great risk to the public."

As a threshold matter, Ellis's justification for compassionate release has been undermined by our recent decisions in *United States v. Broadfield*, 5 F.4th 801 (7th Cir. 2021), and *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021). We held that the current availability of vaccines for COVID-19 "makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *Broadfield*, 5 F.4th at 803. This is especially true here, because the government asserts that Ellis is vaccinated in a letter filed under Rule 28(j) of the Federal Rules of Appellate Procedure. Ellis does not attempt to distinguish his case from *Broadfield* or *Ugbah* either by responding to the government's Rule 28(j) letter or by participating in oral argument.

Even if Ellis could qualify for compassionate release, the district court appropriately evaluated the need to protect the public from his risk of future crimes. *See* § 3553(a)(2)(C). The court noted that Ellis's more recent clean disciplinary record may suggest that he "has changed his ways," but this was "simply too brief a time of action to outweigh the thirty years that preceded it"—a criminal history of a "thirteen-time felon with a frightful history of violence." Such a determination falls well within the court's discretion. *See Ugbah*, 4 F.4th at 598.

Second, Ellis challenges the district court's conclusion that further incarceration is necessary to reflect the seriousness of his crimes. *See* § 3553(a)(2)(A). He argues that 15 years of incarceration—the average sentence, he says, for felons convicted of illegal-firearm possession who are sentenced under the Armed Career Criminal Act—"more than reflect the seriousness of the actions underlying [his] conviction." Against this backdrop, he maintains, the court's ruling that further incarceration was necessary was "utterly irrational."

But, as the district court noted, Ellis is not the average offender. He did not merely possess weapons unlawfully; he illegally acquired them for others, "in part by strong arming others to do his will, including threatening one woman at gunpoint and another as she was mere days from giving birth." And he has served less than half of a

within-guidelines sentence that the district court twice has found to be necessary. Nothing was irrational about the court's determination.

AFFIRMED