*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CO-0409

ELLSWORTH W. COLBERT, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2012-CF1-003958)

(Hon. Anita Josey-Herring, Chief Judge)

(Submitted January 25, 2024                    Decided February 29, 2024)

*Patricia Cresta-Savage* was on the brief for appellant.

*Chimnomnso N. Kalu*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb*, *John P. Mannarino*, and *Peter S. Smith*, Assistant United States Attorneys, were on the brief for appellee.

Before EASTERLY and DEAHL, *Associate Judges*, and STEADMAN, *Senior Judge*.

DEAHL, *Associate Judge*: Ellsworth Colbert appeals the trial court's denial of his motion for compassionate release. The District's compassionate release statute provides that a court "shall modify a term of imprisonment" if a prisoner can satisfy two core requirements by a preponderance of evidence: (1) that they are eligible for

release, which generally requires them to show that they suffer "an acute vulnerability to severe medical complications or death as a result of COVID-19," and (2) that they are "not a danger to the safety of any other person or the community." D.C. Code § 24-403.04(a), (a)(3)(B)(iii).

The trial court concluded that Colbert failed to make either showing and denied his motion for release. Colbert now appeals. We agree with Colbert that the trial court did not properly exercise its discretion in finding that he was ineligible for release. In reaching its conclusion, the trial court failed to consider Colbert's advanced age (now sixty-eight years old) as affecting his vulnerability to COVID-19, and that oversight would warrant a remand for reconsideration if eligibility were dispositive here. It is not dispositive here, though, because we detect no error in the trial court's finding that Colbert failed to establish that he is non-dangerous. We therefore affirm the denial of compassionate release.

## I. Factual and Procedural Background

Colbert is currently serving a seventeen-year sentence for voluntary manslaughter while armed, assault with a dangerous weapon, and carrying a dangerous weapon outside the home or business. As described in this court's opinion from the direct appeal, the underlying incident started one morning when Colbert accused Robert Wright of letting the dog he was walking poop in Colbert's

yard. *Colbert v. United States*, 125 A.3d 326, 328-29 (D.C. 2015). Colbert pulled out a knife and threatened to kill the dog. After Wright responded that the dog belonged to another neighbor, Colbert went to that neighbor's house to confront him. During that confrontation, Wright said something along the lines of "the dog didn't shit in your yard you dumbass." Colbert reacted by repeatedly punching Wright, and Wright retreated.

After about ten seconds, as Colbert was walking away, Wright returned with a shovel. Wright was about twenty years younger than the fifty-six-year-old Colbert, and toxicology reports would later reveal that Wright was quite drunk that morning, with a blood-alcohol level of .19 (about 2.5x the legal limit for driving). Wright approached Colbert and, after some aggressive posturing between the two, hit Colbert on his head and shoulders with the shovel—using it in a "jousting" motion—bloodying his head. The two then moved out of the sight of the witnesses, but eventually Wright stumbled back into view and collapsed. Colbert had stabbed Wright eight times, killing him.

Colbert was charged with first-degree murder while armed, assault with intent to kill while armed, two counts of assault with a dangerous weapon, and carrying a dangerous weapon. The jury acquitted Colbert of first-degree murder, its lesser-included offense of second-degree murder, and of assault with intent to kill. But it

convicted Colbert of voluntary manslaughter (another lesser-included of first-degree murder), one count of assault with a deadly weapon, and of carrying a dangerous weapon. In his direct appeal, Colbert argued that the government violated its constitutional *Brady* obligations to turn over exculpatory evidence when it failed to disclose the facts underlying Wright's prior conviction for assault with a deadly weapon. *Colbert*, 125 A.3d at 329 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). A divided panel of this court affirmed his conviction, largely on the grounds that (1) the government disclosed the bare fact of Wright's past conviction and stipulated to it, and in any event (2) the jury's verdicts indicated that it credited Colbert's claim that he acted in self-defense, so that the *Brady* evidence was not "material" because it would not have affected the outcome of the trial. *Id.* at 331-33. In this court's words, the verdicts evinced that "the jury likely accepted that [Colbert] acted to defend himself against Wright" and "found [him] guilty of manslaughter on a theory that he unreasonably used more force against Wright than was necessary." *Id.* at 333.

*The Motion for Compassionate Release*

Colbert filed a motion for compassionate release in the Superior Court. Under D.C. Code § 24-403.04, a court shall modify a prisoner's sentence if (1) they are eligible for release, which as relevant here, required Colbert to show that he suffers

from "an acute vulnerability to severe medical complications or death as a result of COVID-19," and (2) they are "not a danger to the safety of any other person or the community." D.C. Code § 24-403.04(a), (a)(3)(B)(iii); *see also Autrey v. United States*, 264 A.3d 653, 654-55 (D.C. 2021) (describing "the statute's two core requirements"). The prisoner has the burden of proving both criteria by a preponderance of the evidence. *Id.* at 659 (adopting the preponderance standard as to the eligibility inquiry); *Bailey v. United States*, 251 A.3d 724, 729-30 (D.C. 2021) (per curiam) (same for dangerousness).

As to eligibility, Colbert argued that he was acutely vulnerable to COVID-19, stressing his advanced age (sixty-seven years old at the time), the fact that he is a black male, and his comorbidities including hypertension and several mental illnesses, including major depressive disorder. As to dangerousness, he argued that he would not pose a danger to the community if he were to be released. The government disagreed at both steps of the analysis. It acknowledged that Colbert's major depressive disorder might generally "present an extraordinary and compelling reason for early release," but noted that as with his other illnesses, that condition appeared to be in remission. It further argued that his race and sex did not make him particularly vulnerable to COVID-19, and that he was not elderly within the definition of the statute. But most forcefully, the government stressed as a standalone reason for finding Colbert ineligible for relief the fact that Colbert had

refused to be vaccinated against COVID-19, despite the vaccine being offered to him. Absent "a valid justification for his refusal" of the vaccine, the government argued, Colbert "cannot show an extraordinary and compelling reason." As for dangerousness, the government relied heavily on the facts of the underlying offense and Colbert's disciplinary history while incarcerated in support of its argument that he remained dangerous.

The trial court largely agreed with the government at both steps, concluding that Colbert was not eligible for release and that he remained a danger to the community. On eligibility, the trial court rejected the government's hardline rule that Colbert was per se ineligible for release because he had refused to be vaccinated without a compelling reason, and it instead framed the relevant question as whether Colbert "would remain acutely vulnerable to severe illness even if he was vaccinated." In assessing that question, the trial court found that Colbert's medical records indicated that he no longer suffered from hypertension and that the mental illnesses he identified had been marked in his medical records as either "resolved" or "in remission." It further found that Colbert's status as a black man—a population with higher rates of severe COVID-19 outcomes—nonetheless does not "rise[] to the level of 'extraordinary and compelling' [circumstances warranting release] standing alone." At bottom, the court concluded that "Colbert ha[d] not established by a preponderance of evidence that he would remain acutely vulnerable to severe

illness even if he was vaccinated," and because he had not presented "evidence that his medical conditions truly are severe enough to undercut the efficacy of a COVID-19 vaccination," his conditions did not warrant compassionate release. Nowhere in its order did the court address Colbert's age as a possible risk factor, nor did the court's order acknowledge Colbert's advanced age.

In finding that Colbert had failed to establish that he was not dangerous, the court analyzed the nature of the underlying offense but never mentioned that the jury that convicted Colbert appeared to have concluded that he acted in imperfect self-defense (as our opinion in the direct appeal reasoned). The court also found that Colbert had a prior history of violence before the underlying offenses, and had not demonstrated while in prison that he had been rehabilitated, accruing behavioral infractions and not participating in rehabilitative programming. The court denied compassionate release, and Colbert now appeals.

## II. Analysis

On appeal, Colbert contends that the trial court erred when it deemed him ineligible for compassionate release, in part because the court ignored his advanced age and race as relevant risk factors. He also challenges the trial court's finding that he remains dangerous, and he points to new evidence that he suggests rebuts the trial court's finding that he is dangerous. We review the trial court's rulings, both as to

eligibility and as to dangerousness, under the abuse of discretion standard. *United States v. Facon*, 288 A.3d 317, 336 (D.C. 2023) (first citing *Autrey*, 264 A.3d at 659, then citing *Page v. United States*, 254 A.3d 1129, 1130 (D.C. 2021)).

## A. Eligibility

Colbert argues that he is eligible for compassionate release under the catchall provision because "extraordinary and compelling reasons" warrant his release. D.C. Code § 24-403.04(a)(3). The parties agree, as the trial court reasoned, that one way of demonstrating extraordinary and compelling reasons justifying release is for a prisoner to show that they suffer an "acute vulnerability to severe medical complications or death as a result of COVID-19." *Id.* § 24-403.04(a)(3)(B)(iii).[1]

The government argued as a threshold matter in the trial court that Colbert's refusal to get vaccinated automatically bars him from establishing eligibility under

---

[1] By its terms, section 24-403.04(a)(3)(B)(iii) applies only to prisoners who are age 60 or older and have completed a certain portion of their prison sentence. But the District's trial courts have generally concluded that under the "catchall provision, a D.C. prisoner can demonstrate eligibility for compassionate release by showing that they are at risk for severe illness from COVID-19, regardless of age or time served." *Page*, 254 A.3d at 1133 (Easterly, J., dissenting). The D.C. Council appears to have endorsed that interpretation of its statute. *Autrey*, 264 A.3d at 659 n.13 (citing Report on Bill No. 23-127 at 27-28 as "approving of trial judges dispensing with the age and time-served requirements"). The government does not dispute that interpretation on appeal, and so we do not examine the issue further.

the catchall provision, at least absent some compelling reason for his refusal. While it is not entirely clear if the government is pressing that same view on appeal, we assume that it is, as it relies heavily on out-of-jurisdiction cases that have adopted that per se approach to the federal compassionate release statute. *See, e.g.*, *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (prisoner who declines vaccination "cannot plausibly" demonstrate eligibility unless he can "show that he is unable to receive or benefit from a vaccine"); *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("[I]f an inmate does not present a compelling reason justifying the failure to be vaccinated despite access to the vaccine, a district court would abuse its discretion by granting a motion seeking a sentence reduction" under the catchall provision). The trial court correctly rebuffed that hardline position, as this court has already rejected it.

We held in *Autrey* "that a prisoner's vaccination status is a relevant and permissible consideration in determining whether" they are eligible for release, but that while vaccination status is more than "just another factor of undifferentiated significance," it "is not the end all, be all of" the eligibility inquiry. 264 A.3d at 655-56, 658. While *Autrey* concerned a prisoner who was vaccinated—and we held that he was not ineligible for release on that basis alone—its reasoning extends to the unvaccinated as well. Just as a vaccinated prisoner may be eligible for compassionate release if they remain acutely vulnerable to COVID-19, an

unvaccinated prisoner may likewise be eligible for release if (1) they had a compelling reason to refuse the vaccine, such as an inability to benefit from it or if the vaccine itself posed a meaningful risk to them, *or* (2) they would remain acutely vulnerable to severe medical complications or death as a result of COVID-19 even had they vaccinated.[2] *See id.* at 658. The trial court correctly understood that, vaccinated or not, eligibility depends on an individualized assessment of the person's risk factors. *Id* at 656, 658.

Unfortunately, the trial court's analysis of the risk factors in this case failed to account for—and did not so much as mention—a significant risk factor that Colbert had highlighted for the court: his age. Ignoring Colbert's age was a "fail[ure] to consider a relevant factor" that infects the trial court's eligibility ruling. *Johnson v. United States*, 398 A.2d 354, 365 (D.C. 1979) (quotation omitted). Even the most casual observer of epidemiology knows that a person's age is an important risk factor

---

[2] This second possibility distinguishes our precedents from the more sweeping pronouncements of *Broadfield* and the federal authorities the government relies upon. That is, a person may have no good reason at all to refuse to be vaccinated but still be eligible for release if they would remain acutely vulnerable to death or severe medical complications from COVID-19 if they were to vaccinate. They need not show that the vaccine posed a danger to them, or that they would have received no benefit from the vaccine, as *Broadfield* seems to require. It is enough for them to show that the vaccine's benefits, whatever they may be, would not bring them outside the sphere of the acutely vulnerable.

to consider in predicting whether a person will suffer severe medical complications or death from COVID-19. "Most COVID-19 deaths occur in people older than 65." Centers for Disease Control and Prevention, *Factors That Affect Your Risk of Getting Very Sick from COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/risks-getting-very-sick.html; https://perma.cc/H2D3-48J9 (last visited February 7, 2024). One CDC analysis showed that, while rates of COVID-19 infection were even across age groups, a person in Colbert's age group—65-74—was five times as likely to be hospitalized and *sixty-five* times more likely to die than an 18-29-year-old. Centers for Disease Control and Prevention, *Risk for COVID-19 Infection, Hospitalization, and Death by Age Group*, https://stacks.cdc.gov/view/cdc/116835; https://perma.cc/LQB5-RLM3 (last visited February 7, 2024).

Colbert, who was sixty-seven at the time he filed his motion for compassionate release, repeatedly cited his age as a factor in his compassionate release motion. The trial court ignored it. It could be argued, in defense of the trial court's ruling, that implicit in its findings that Colbert did not suffer from any medical comorbidities was a ruling that advanced age alone could not establish Colbert's eligibility for release, and it would be hard to take issue with that ruling (barring somebody considerably older than Colbert himself). But in this discretionary sphere we will not read tea leaves or prophesize about potential

reasoning that the trial court did not in fact provide. It was incumbent on the trial court to factor Colbert's advanced age into the eligibility calculus, and it failed to do that. That deficiency precludes us from upholding the trial court's ruling at the eligibility step of the analysis, so that we must consider its dangerousness ruling.

## B. Dangerousness

We detect no similar error—at least none that Colbert has complained of—in the trial court's conclusion that he did not carry his burden to show he would not be a danger if released.

Colbert does not take genuine issue with the trial court's dangerousness assessment based on the record before the court at the time. Instead, Colbert argues that various late-breaking facts that were not in the record before the trial court— including seventeen letters written by Colbert to his appellate counsel—warrant a remand to determine whether (contrary to the trial court's conclusion) "Colbert continues to suffer from a mental health disorder" that, if adequately treated, would mitigate his dangerousness. In appellate counsel's words, the trial court failed to recognize "that Mr. Colbert is an elderly man, suffering from unevaluated and undiagnosed mental health issues."

Maybe that's right, but we cannot fault the trial court for failing to consider evidence that was not before it, nor can we fault the trial court for failing to reach a conclusion that the evidence that was before it did not support. The evidence before the trial court was that Colbert had two mental health diagnoses—narcissistic personality disorder and major depressive disorder—the first of which had been "resolved," and the second of which was noted as being in "remission" by the time he filed his motion. His current argument that he suffers from some additional undiagnosed mental health disorders, or perhaps that his past diagnoses have resurfaced, was simply not supported by the evidence before the trial court. Colbert is free to file a new motion for compassionate release, *Autrey,* 264 A.3d at 659-60, and attempt to substantiate his late-breaking claims.

There is one aspect of the trial court's dangerousness ruling that troubles us and merits some discussion, however, particularly in light of this court's opinion in Colbert's direct appeal. The trial court relied heavily on the nature of Colbert's underlying offenses in concluding that he was still dangerous, as it was generally permitted to do. *Bailey*, 251 A.3d at 733 ("When considering a prisoner's dangerousness, it is appropriate to weigh 'the nature and circumstances' of their underlying offense(s)." (quoting 18 U.S.C. § 3553(a)(1))). But the trial court's description of the underlying offenses leaves out the critical fact that Colbert apparently acted in self-defense—albeit with excessive force—as this court

previously opined, *Colbert*, 125 A.3d at 331, and as the government urged this court to conclude in that direct appeal, *see* Brief for Appellee at 45, No. 13-CF-0616 (D.C., Feb. 27, 2015) (pointing out that Colbert's acquittals indicate that the jury concluded he "acted in self-defense . . . with respect to the initial stab[bing]"). This was critical to our affirmance of Colbert's convictions on direct appeal, where Colbert argued that the government had failed to disclose details about Wright's past conviction for assault with a deadly weapon, despite the fact that the "prior conviction was favorable to [Colbert] because he was making a claim of self-defense." *Id.* at 331. We rejected Colbert's *Brady* claim largely because any failure to disclose was immaterial given "that the jury likely accepted that [Colbert] acted to defend himself against Wright" but "he unreasonably used more force against Wright than was necessary." *Id.* at 333.

If a court is going to gauge a person's present dangerousness based partly on their past offenses[3]—as we countenanced in the compassionate release context in

---

[3] The extent to which that is permitted comes up in the distinct context of the Incarceration Reduction Amendment Act ("IRAA"), D.C. Code § 24-403.03, and in a separate opinion issued today this court confronted a prisoner's argument that the trial court over-relied on the underlying offense in assessing his dangerousness. *Bishop v. United States*, No. 22-CO-0650, slip op. at 41-42 (D.C. Feb. 29, 2024). Because the court in *Bishop* remanded for a different reason, it concluded that it did not need to resolve the argument. *Id.* at 42.

*Bailey*, 251 A.3d at 733—it is critical that it demonstrate an accurate understanding of the core facts of the underlying offenses. If the "past is prologue," *Bailey*, 251 A.3d at 733 (quotation omitted), that prologue cannot be selectively excerpted in a way that ignores factors mitigating past offenses, as occurred here. More pointedly, a court cannot describe the facts of a manslaughter conviction as if it were a first- or second-degree murder conviction, ignoring the mitigating factors that animated the jury's verdicts and its decisions to acquit the defendant of those greater charges. And it would be particularly unsettling in this case, where this court affirmed Colbert's convictions on direct appeal based on one understanding of the jury's verdicts, if in later proceedings the District's courts were free to ignore that understanding by omitting the facts that mitigate the seriousness of the offenses.

Yet the trial court betrayed no knowledge that Colbert acted in imperfect self-defense. Here is its description of what happened:

> Mr. Colbert pulled a knife on Mr. Wright over a dispute concerning whether a dog had defecated on Mr. Colbert's lawn, a dog that did not even belong to Mr. Wright. After verbal arguments and threats, Mr. Colbert resorted to violence, first assaulting Mr. Wright with his fists. When Mr. Wright obtained a shovel to use in the fight, Mr. Colbert stabbed Mr. Wright multiple times, killing him. Instead of resolving the issue with words, Mr. Colbert quickly resorted to threats and physical violence, violence that ultimately ended with the death of Mr. Wright.

There are two glaring omissions in that account of the offense that skew it heavily against Colbert: First, Wright did not, as the trial court put it, merely "obtain[] a shovel"; he hit Colbert over the head with it. Second, Wright did not grab the shovel in self-defense in the midst of an ongoing scuffle, as the trial court's retelling suggests, but instead he left the scene and then—as Colbert was walking away from where the dust had apparently settled—reinitiated the fight by striking Colbert with that shovel. There is a world of difference between the offense that the trial court described and the account the jury credited. In both accounts Colbert committed a heinous crime, but the trial court described what would appear to be a first-degree (or perhaps a second-degree) murder. Yet the jury acquitted him of those very offenses, and instead found him guilty only of voluntary manslaughter in light of considerable mitigating facts. The key difference between the offenses the trial court described and the offenses of conviction is that Wright returned to the scene with a shovel and whopped Colbert over the head with it. The trial court's critical omission of that fact goes to the very heart of its dangerousness ruling, which relied heavily on Colbert's underlying offenses.

With that said, we do not understand Colbert to be raising this particular complaint with the trial court's ruling in this appeal. To be sure, Colbert raises the broader claim that the trial court erred in concluding that he was dangerous, and that is enough to confer upon us the discretion to consider points in service of that claim,

including those that "'the parties did not lock horns over' in their briefs." *Jones v. District of Columbia*, 996 A.2d 834, 838, 840-42 (D.C. 2010) (quoting *United States Nat'l Bank of Oregon v. Independent Ins. Agents of Am., Inc.,* 508 U.S. 439, 446 (1993)) (exercising discretion to examine issue that was "conspicuously absent" from the opening briefs but the court directed supplemental briefing on). "We ordinarily do not consider points that a party did not squarely present on appeal," but "'when an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.'" *Smith v. United States*, 306 A.3d 67, 76-77 (D.C. 2023) (citing *Jones*, 996 A.2d at 840).

Still, that is a discretion we exercise with restraint, because "we follow the principle of party presentation," where "'the parties [] frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'" *United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1579 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). And there are no particularly strong reasons for departing from our usual course of bypassing issues that are not squarely raised by the parties in their initial briefs. There is in fact a strong reason not to deviate from that course: Colbert is free to file a new motion for compassionate release at any

time, so that the more prudent course is to simply highlight the trial court's oversight in the hopes that it is not repeated in future proceedings (in this or other cases).

### III. Conclusion

For the foregoing reasons, the trial court's order denying Colbert's motion for compassionate release is affirmed.

*So ordered.*