NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0295n.06

Case No. 24-3883

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 13, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| MARCUS PRYOR, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: COLE, READLER, and RITZ, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Inmate Marcus Pryor moved for compassionate release based on health risks posed by new variants of the COVID-19 virus. The district court denied his motion. Seeing no abuse of discretion, we affirm.

**I.**

In 2008, Pryor was diagnosed with type-1 myotonic dystrophy, a disease that causes progressive muscle weakening. *United States v. Pryor*, No. 20-4231, 2021 U.S. App. LEXIS 9307, at *1–2 (6th Cir. Mar. 30, 2021) (order). Between 2012 and 2017, Pryor conspired with his brother to traffic between 15,000 and 50,000 pills of oxycodone from Las Vegas to central Ohio. *Id.* at *5–6. After Pryor pleaded guilty to joining this conspiracy (and to laundering the pair's $300,000 in drug proceeds), *id.* at *1, *5–6, the district court at sentencing granted him a significant

downward variance based on his worsening medical condition, resulting in "a 140-month sentence—less than half the low end of the applicable guidelines range[,]" *id.* at *7. The court also ordered that Pryor be incarcerated at a federal medical center. *Id.* at *6. Accordingly, he now resides at FMC Butner, a specialized inmate medical facility in North Carolina, "essentially a prison hospital." Meg Anderson, *1 in 4 Inmate Deaths Happens in the Same Federal Prison. Why?*, NPR (Sept. 23, 2023, at 6:00 am ET), https://perma.cc/ZV2R-LBD4 (last visited May 2, 2025, at 1:25 pm ET).

During his time in custody, Pryor has raised concerns over his asserted susceptibility to COVID-19's effects. Twice in 2020, Pryor moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Each time, Pryor argued that his "heightened risk of complications from COVID-19" provided an "extraordinary and compelling reason" to reduce his sentence. *Pryor*, 2021 U.S. App. LEXIS 9307, at *2–3. The district court rejected both efforts. *Id.* at *1–3. When Pryor appealed the second denial, we affirmed. *Id.* at *7–8. In 2021, Pryor contracted COVID-19 and was briefly hospitalized with pneumonia.

Pryor moved for compassionate release again in July 2024, claiming that his now-worsened medical condition has increased the risks he faces from new COVID-19 variants. As before, the district court found that any associated risks did not provide Pryor with an extraordinary and compelling reason for release. In so doing, the district court cited Pryor's refusal to take the COVID-19 vaccine, the low number of COVID-19 cases at FMC Butner, and the lack of evidence that a second bout with the virus would pose Pryor any "serious, let alone deadly, medical risks." R. 115, PageID#645.

**II.**

Pryor's road to a sentence reduction is not an easy one. Start with the reality that later reduction of a final sentence is the "except[ion]," not the norm. 18 U.S.C. § 3582(c). So to achieve that remedy, Pryor must pass three thresholds.

First, he must show that a sentence reduction is "warrant[ed]" by "extraordinary and compelling reasons[.]" 18 U.S.C. § 3582(c)(1)(A)(i). In policing the outer boundary of this statutory term at this first step, courts must determine whether the reason given falls within "the plain meaning of 'extraordinary and compelling.'" *United States v. Bricker*, 135 F.4th 427, 440–41 (6th Cir. 2025) (citation omitted).

Second, if Pryor's asserted reasons fit within that statutory definition, he must also demonstrate that they are "consistent with" the Sentencing Commission's views on the matter, as captured in the "applicable policy statements[.]" 18 U.S.C. § 3582(c)(1)(A)(ii). Key among these "applicable policy statements[,]" *id.*, is the recently amended Guideline § 1B1.13, which now applies to defendant-filed motions (not just motions filed by the Bureau of Prisons), *see United States v. Washington*, 122 F.4th 264, 266 (6th Cir. 2024), and which limits the universe of "extraordinary and compelling" reasons that can support sentence relief to a list of five, *see* U.S. Sent'g Guidelines Manual § 1B1.13(b)(1)–(5) (U.S. Sent'g Comm'n 2024); *see Bricker*, 135 F.4th at 450 (invalidating § 1B1.13(b)(6)).

Third, if Pryor clears these two threshold steps, he then "must persuade the district court to grant the motion after the court considers the 18 U.S.C. § 3553(a) factors." *Washington*, 122 F.4th at 266 (citation modified); *see* 18 U.S.C. § 3582(c)(1)(A).

Here, we need go no further than the first step, because we see no abuse of discretion in the district court's determination that none of Pryor's reasons for relief were extraordinary and

compelling. *See United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021). In other words, the district court did not "appl[y] the incorrect legal standard," "misappl[y] the correct" one, or "rel[y] upon clearly erroneous findings of fact" in rejecting Pryor's arguments on this front. *Id.* (citation omitted).

To Pryor's mind, "suffer[ing] from myotonic dystrophy" combined with the attendant "increased risk of severe illness" from being exposed to COVID-19 amounts to an extraordinary and compelling reason justifying a sentence reduction. Br. Appellant Pryor 9. Critical here is the threshold point that Pryor refused to take the COVID-19 vaccine he was offered by prison officials. "[A]ccess to the COVID-19 vaccine substantially undermines" a COVID-19-based argument for release, because "with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *Lemons*, 15 F.4th at 751. Local data seemingly confirms the low risk Pryor faces of contracting the virus, with the vaccine now widely available. As the government points out, across all four facilities located within Federal Correctional Complex Butner, of which FMC Butner is one, only two inmates were infected with COVID-19 as of January 21, 2025. *Inmate COVID-19 Data*, Fed. Bureau of Prisons, https://perma.cc/2GKV-CLDJ (last visited May 4, 2025, at 6:34 pm ET).

The vaccine's availability deeply undermines Pryor's claim, even accepting that his worsened condition poses heightened COVID-19-related risks. "A prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release." *United States v. Brownlee*, No. 21-2591, 2022 WL 35404, at *2 (6th Cir. Jan. 4, 2022) (citation modified) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). Pryor has not "present[ed] a compelling reason justifying [his] failure to be vaccinated." *See Lemons*, 15 F.4th at 751 (citation omitted).

Resisting this conclusion, Pryor points to the absence of evidence of him being offered (or refusing) a vaccine after 2021. As a result, he says, the district court's determination that he "refused the COVID[-19] vaccine," R. 115, PageID#645, is clearly erroneous. Multiple flaws plague this argument. One, Pryor never raised the point in district court. *See Joseph Forrester Trucking v. Dir., Off. of Workers' Comp. Programs*, 987 F.3d 581, 593 (6th Cir. 2021) ("[P]arties forfeit arguments not raised before the district court[.]" (citing *Frazier v. Jenkins*, 770 F.3d 485, 497 (6th Cir. 2014))). Two, in doing so now, Pryor concedes that he "refused the vaccine once" before, Br. Appellant Pryor 11, absolving this factual finding of any error, much less a clear one. Finally, as the government points out, public records make clear that the Bureau of Prisons continues to make both "primary vaccination" and "booster dose[s]" "available" to inmates, and "encourage[s]" their use. Fed. Bureau of Prisons, *COVID-19 Vaccine Guidance* 5–6 (2023), https://perma.cc/2CPT-BFNH (last visited May 2, 2025, at 1:29 pm ET). In short, the district court's finding that the vaccine was not made available to Pryor is not clearly erroneous.

Nor did the district court misapply the legal standard by failing to note the reported mortality rates for inmates at FMC Butner. *See* Anderson, *supra* ("[A] quarter of th[e] deaths [in federal custody] occurred in . . . the Butner Federal Correctional Complex . . . ."). Remember, this specialty facility is used by "inmates who need intensive medical care[,]" and houses "the [BOP]'s largest cancer treatment facility." *Id.* (citation modified). That the facility holds many deeply ill patients best explains why mortality rates there are relatively higher than at other federal facilities. This data alone, in other words, says very little about Pryor's chances of contracting—and dying from—COVID-19 while at FMC Butner.

5

We likewise see nothing improper in the district court noting Pryor's previous case of COVID-19 as part of its decision to deny him a sentence reduction. The district court did not rely on Pryor's prior infection in evaluating risk. Rather, it determined that Pryor "provide[d] no medical evidence that he would face serious, let alone deadly, medical risks if he contracts [COVID-19] again." R. 115, PageID#645.

Finally, Pryor laments that the district court did not "consider[] [his] struggle with myotonic dystrophy itself as a basis for compassionate release." Br. Appellant Pryor 12. But there was good reason for it not to do so: the condition was accounted for at Pryor's sentencing. Pryor cannot "simply tak[e] facts that existed at sentencing and repackag[e] them as 'extraordinary and compelling.'" *See United States v. Hunter*, 12 F.4th 555, 569 (6th Cir. 2021). Rather, if his post-sentencing medical condition was "anticipated" by the district court at sentencing and "considered" as a "mitigating factor[]" in imposing the sentence, associated health consequences later coming to fruition are not extraordinary or compelling. *See United States v. Smith*, No. 23-5519, 2024 WL 1007115, at *5 (6th Cir. Mar. 8, 2024); *cf. United States v. Keefer*, 832 F. App'x 359, 364–65 (6th Cir. 2020) (no abuse of discretion in denying compassionate release, despite inmate's progressively debilitating seizures, because the "health concerns arose throughout" the sentencing proceeding and the court understood "that the seizures would get worse").

This describes Pryor's sentencing. His "progressive wasting disease," *Pryor*, 2021 U.S. App. LEXIS 9307, at *2, was fully fleshed out during his sentencing hearing, with Pryor testifying that myotonic dystrophy has "no cure," that he was already reliant on a "breathing machine," and that his condition was "only going to get worse" over his life. R. 81, PageID#323. The district court, in fact, "anticipated" as much, *see Smith*, 2024 WL 1007115, at *5, noting that Pryor would "probably do all of [his] time in a federal medical center unless there [wa]s some miraculous

6

healing of [his] myotonic dystrophy." R. 81, PageID#326. The court thus "considered" this reality as a "mitigating factor[]," *see Smith*, 2024 WL 1007115, at *5, so much so that Pryor's sentence was "less than half the low end of the applicable guidelines range[,]" *Pryor*, 2021 U.S. App. LEXIS 9307, at *7. That these prognoses regrettably came true provides no extraordinary and compelling reason to further reduce Pryor's already lenient sentence.

*     *     *     *     *

We affirm.